THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CASSIAN T. COLEMAN, Defendant-Appellant.

Fourth District   No. 4—07—0921

Opinion filed June 17, 2009.—Rehearing denied July 16, 2009.

Charles M. Schiedel and Allen H. Andrews, both of State Appellate Defender's Office, of Springfield, for appellant.

Jack Ahola, State's Attorney, of Decatur (Patrick Delfino, Robert J. Biderman, and John E. Teefey, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE APPLETON delivered the opinion of the court:

A jury found defendant, Cassian T. Coleman, guilty of three offenses: count VII, unlawful possession of a controlled substance with intent to deliver it (720 ILCS 570/401(a)(2)(D) (West 2006)); count VIII, unlawful delivery of a controlled substance (720 ILCS 570/401(a)(2)(D) (West 2006)); and count X, criminal drug conspiracy (720 ILCS 570/405.1 (West 2006)). All three counts related to the same 926 grams of cocaine, People's exhibit No. 2. The trial court sentenced him to three concurrent prison terms of 25 years, with credit for 117 days and a $3,000 mandatory drug treatment assessment with $585 credit for time served. The court also imposed a street-value fine of $92,600 and another fine of $1 million.

Defendant appeals on six grounds. First, he argues that the defense cast doubt on the chain of custody and, therefore, the trial court erred in (a) admitting People's exhibit No. 2 into evidence and (b) barring the defense from arguing to the jury that the State failed to prove the illegal substance weighed 926 grams. We find that a stipulation at trial defeats this argument.

Second, defendant argues that if, by entering into the stipulation, defense counsel waived objections to the chain of custody, he thereby rendered ineffective assistance. We decline to consider this argument because it requires evidence external to the record and, thus, is better suited for postconviction proceedings.

Third, defendant argues he is entitled to a new trial because defense counsel "waived" his presence during discussions of notes from the deliberating jury—a waiver that, according to case law, was ineffectual. We find this error to be harmless.

Fourth, defendant argues we should vacate the convictions of counts VII and X because it is impermissible to convict a defendant both of the inchoate offense (count X) and the principal offense (count VIII) and of the greater offense (count VIII) and the included offense (count VII). The State agrees, and so do we.

Fifth, defendant argues the trial court lacked authority to impose more than one fine or a fine greater than $500,000. We conclude that the fines were authorized by section 401(b) of the Illinois Controlled Substances Act (720 ILCS 570/401(b) (West 2006)) and section 5—9—1.1(a) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—9—1.1(a) (West 2006)).

Sixth, defendant argues he is entitled to eight additional days of presentence credit. The State agrees, and so do we.

Therefore, we vacate the convictions of counts VII and X and modify the judgment so as to allow eight more days of presentence credit and an additional credit of $40 against the mandatory drug treatment assessment. Otherwise, we affirm the judgment as modified and remand with directions.

## I. BACKGROUND

### A. The Charges

On July 27, 2006, the State filed an additional information, which charged defendant with committing four offenses in Macon County during the period of March 21 to 22, 2006. Count VII charged him with unlawfully possessing, with the intent to deliver, 900 grams or more of a substance containing cocaine. 720 ILCS 570/401(a)(2)(D) (West 2006). (The record does not appear to contain the original information, and, in any event, only the convictions of counts VII, VIII, and X of the additional information are at issue in this appeal.)

Count VIII charged defendant with unlawfully delivering to Genaro Hendrix 900 grams or more of a substance containing cocaine. 720 ILCS 570/401(a)(2)(D) (West 2006).

Count IX charged defendant with unlawfully possessing 900 grams or more of a substance containing cocaine. 720 ILCS 570/402(a)(2)(D) (West 2006).

Count X charged defendant with a criminal conspiracy in that, with the intent that the offense of unlawful possession of a controlled substance with intent to deliver it be committed, he agreed with Hendrix to unlawfully possess, with the intent to deliver, 900 grams or more of a substance containing cocaine. 720 ILCS 570/405.1(a) (West 2006).

All four counts alleged that in Cook County case No. 98—C—55048701, defendant was previously convicted of unlawful possession of a controlled substance. See 720 ILCS 570/408(a) (West 2006) ("Any person convicted of a second or subsequent offense under this Act may be sentenced to imprisonment for a term up to twice the maximum term otherwise authorized, fined an amount up to twice that otherwise authorized, or both").

### B. The Jury Trial

In the jury trial on September 5 and 6, 2007, the State adduced the following evidence. Zundra Cotton lived at 353 North 18th Street, Decatur, Illinois, with Hendrix, a cocaine dealer. On March 22, 2006, the police raided the house. Defendant was standing on the steps of the front porch, and they arrested him. They searched his person, and he had a key to the front door. Cotton's purse was on the kitchen

table, and inside her purse were 15 bags of white powder. Two black plastic bags were crumpled up on the table, beside the purse, and inside those bags was a clear plastic wrapper. Such materials commonly were used for packaging cocaine in kilograms. Defendant's fingerprints were on the black plastic bags. Cotton testified that defendant was Hendrix's supplier and that earlier in the morning, the day of the raid, defendant brought over a package of cocaine and she helped break it up and put it in the 15 bags.

The parties entered into the following stipulation:

"(1) *** Dan Ashenfelter is a [p]olice [o]fficer for the City of Decatur and is assigned as [e]vidence [o]fficer for the department.

*** [O]n March 30[ ], 2006, he retrieved People's [e]xhibit[ ] N[o.] *** 2 *** from the evidence locker at the Decatur [p]olice [d]epartment. *** [M]embers of the public are not allowed access to the evidence locker. *** People's [e]xhibit N[o.] *** 2 *** [was] then in a sealed condition.

*** [O]n that date[,] Dan Ashenfelter transported and delivered People's [e]xhibit N[o.] *** 2 *** to the Illinois State Police [c]rime [l]ab in Springfield, Illinois. *** Ashenfelter made no changes or alterations to the exhibit[ ] and did not tamper with the contents of the exhibit[ ] in any way.

*** People's [e]xhibit[ ] [No.] *** 2 *** [is] now in the same or substantially the same condition as [it was] on March 30[ ], 2006.

*   *   *

(4) *** Michael Cravens was employed as a [f]orensic [s]cientist with the Illinois State Police [c]rime [l]ab in Springfield ***. [He] is qualified as an expert witness in the identification of controlled substances.

*** [O]n March 30[ ], 2006, he received People's [e]xhibit N[o.] 2 *** from Dan Ashenfelter at the [c]rime [l]ab. *** People's [e]xhibit N[o.] 2 *** [was] then in a sealed condition[,] and the exhibit[ ] [is] now in the same or substantially the same condition as when he received [it].

*** [H]e subsequently performed tests on People's [e]xhibit N[o.] 2 ***. *** [B]ased upon the tests he performed [and] his expertise[,] Michael Cravens was able to determine[,] to a reasonable degree of scientific certainty[,] that the white powder in People's [e]xhibit N[o.] 2 was 926.0 grams of cocaine."

Immediately after reading that stipulation to the jury, the State called David Dailey, a detective with the Decatur police. He testified he assisted in executing the search warrant on March 22, 2006. At the scene of the raid, he weighed the 15 bags from the purse. Nine of the bags weighed 63 grams apiece, and the other six bags weighed 64 grams apiece. He field-tested only one of the 15 bags: it tested positive

for cocaine. Then he emptied the 15 bags into a larger evidence bag, People's exhibit No. 2; sealed it; and took it to the evidence vault.

When the State rested, defense counsel objected to the admission of People's exhibit No. 2, and moved for a directed verdict, because before commingling the 15 bags, Dailey field-tested only 1 of the bags, *i.e.*, 63 or 64 grams. Defense counsel argued there was no evidence that the other 14 bags contained any cocaine at all and, therefore, the State not only failed to prove a sufficient chain of custody for the admission of People's exhibit No. 2 but also failed to prove that defendant possessed 900 grams or more of a substance containing cocaine, as alleged in the charges. The trial court overruled the objection and denied the motion for a directed verdict, for the parties had stipulated that "Cravens was able to determine[,] to a reasonable degree of scientific certainty[,] that the white powder in People's [e]xhibit N[o.] 2 was 926.0 grams of cocaine."

Before closing arguments, the State moved to prohibit defense counsel from making to the jury the argument that the trial court previously rejected, namely, that because Dailey field-tested only 1 of the 15 bags before commingling them, the State had failed to prove that defendant possessed 900 grams or more of a substance containing cocaine. The court granted the motion.

The jury retired to deliberate at 3:37 p.m. on September 6, 2007. At 8:40 a.m. on September 7, 2007, the trial court told the parties:

"THE COURT: *** We're outside the presence of the jury. *** The [c]ourt received a note from the jurors at 4:50 p.m. last night as they were leaving for the evening. It reads as follows: [']Can we get any type of court report from testimonies?['] Okay. I will take suggestions from the parties as to how to respond to that."

Both the prosecutor and defense counsel recommended telling the jurors to rely on their memories. The court said: "Okay. Then I will send that response back to the jurors. You'll show all parties present as well as the defendant."

At 8:50 a.m. on September 7, 2007, the trial court received a second note from the deliberating jury. The note inquired: " 'Can we see all the evidence other than the drugs?' " The court did not say that defendant was present (or absent) during the discussion of this second note. At the court's suggestion, the attorneys went through the exhibits and agreed on the ones the jury should receive. The court then sent those exhibits to the deliberation room.

At 10:45 a.m. on September 7, 2007, the trial court received a third note from the jury. The court told the attorneys:

"THE COURT: *** We're on the record outside the presence of the jury. [Defense counsel] waives the appearance of the defendant.

[DEFENSE COUNSEL]: We do."

The note asked: " 'Can we get a dictionary?' " The attorneys agreed the court should respond by asking which term the jury wished to have defined. The court said:

"THE COURT: So, here's what I will respond[:] ['P]lease inform us as to what term you are seeking a definition.[']

[DEFENSE COUNSEL]: Or *** plural[—][']term or terms.[']

THE COURT: Okay. Okay. If you'll wait here[,] I'm sure we'll get it right back. Back on the record. Okay. The [c]ourt submitted the response to the jury. I was informed by the [c]ourt [s]ecurity [o]fficer that they no longer need the dictionary. Since I don't go in and I don't inquire[,] that's all I can say. And I don't know if it means [be]cause they have a verdict or because they figured out the definition.

[DEFENSE COUNSEL]: That's just what I was gonna ask.

THE COURT: I mean I didn't ask why. Because I didn't go in. Okay. After they told me they didn't need a dictionary[,] [n]ow[ ] they come back with [']a definition of ["]abet[," '] which is a legal term.

\* \* \*

[DEFENSE COUNSEL]: [']Assist.[']

[PROSECUTOR]: I guess we could look in the dictionary to see what it says and see if it's even something we want to touch on. The [c]ourt has looked up the definition of [']abet['] in the Webster [d]ictionary. And by agreement of the parties[,] we'll give the definition as follows: [']To assist or support in the achievement of a purpose.[']"

The court wrote down the definition and sent it back to the deliberation room.

At 11:45 a.m. on September 7, 2007, the jury found defendant guilty of count VII, unlawful possession, with the intent to deliver, 900 grams or more of a substance containing cocaine (720 ILCS 570/401(a)(2)(D) (West 2006)); count VIII, unlawful delivery of 900 grams or more of a substance containing cocaine (720 ILCS 570/401(a)(2)(D) (West 2006)); and count X, criminal drug conspiracy (720 ILCS 570/405.1(a) (West 2006)). The trial court entered judgment on the three guilty verdicts.

## C. The Sentencing Hearing

On October 24, 2007, the trial court held a sentencing hearing. The presentence-investigation report did not mention any case from Cook County having a case number 98—C—55048701, as alleged in the charges. In fact, the report did not mention any previous drug conviction at all, although it listed two convictions, both in Cook

County, for having forbidden items in prison. On August 26, 1998, in case No. 98—CF—114093001, defendant was sentenced to 12 months' imprisonment for possessing contraband in a penal institution or bringing it into the institution (the report does not say what the contraband was). On October 20, 1998, in case No. 98—CF—2353501, he was sentenced to 12 months' imprisonment for possessing alcohol in a penal institution or bringing it into the institution.

The prosecutor admitted to the trial court no evidence showed that defendant had a prior drug conviction and, therefore, the sentencing range was 15 to 60 years' imprisonment (720 ILCS 570/401(a)(2)(D) (West 2006)) instead of 15 to 120 years' imprisonment (720 ILCS 570/408(a) (West 2006)).

The trial court sentenced defendant to three terms of imprisonment for 25 years, ordering that the terms run concurrently. The court also imposed a fine of $1 million, a drug assessment of $3,000, a laboratory fee of $100, and a street-value fine of $92,600.

With respect to the question of presentence credit, the State stipulated that the police arrested defendant on March 22, 2006, when they executed the search warrant. On March 29, 2006, however, the State released him without filing charges. It was not until July 27, 2006, that the State filed the charges, after receiving the laboratory results. The State argued that because it had filed no charges against defendant when he was in jail from March 22 to 29, 2006, he deserved no credit for those eight days. The State argued he was entitled to credit only for the 117 days he spent in jail after the State filed charges against him. The trial court agreed with the State and gave him credit for only 117 days. The court also gave defendant a corresponding credit of $585 against the mandatory assessment of $3,000 (117 days x $5).

This appeal followed.

## II. ANALYSIS

### A. Chain of Custody

#### 1. *Inclusion of This Issue in the Posttrial Motion*

■ Defendant argues the trial court erred in admitting People's exhibit No. 2 into evidence because he produced evidence that Dailey tampered with, or altered, the exhibit and the State failed to rebut the evidence of tampering, making the chain of custody insufficient. See *People v. Woods*, 214 Ill. 2d 455, 468, 828 N.E.2d 247, 255 (2005). The State responds, initially, that defendant has forfeited this issue by omitting it from his posttrial motion. See *People v. Young*, 128 Ill. 2d 1, 38, 538 N.E.2d 453, 467-68 (1989).

Paragraph 9 of defendant's posttrial motion states: "The [c]ourt erred in overruling defendant's objection to the admission of [People's] exhibit [No.] 2, the 926 grams of cocaine." A posttrial motion must alert the trial court to the alleged error with enough specificity to give the court a reasonable opportunity to correct it. *People v. Brown*, 150 Ill. App. 3d 535, 540, 501 N.E.2d 1347, 1351 (1986). Paragraph 9 of the posttrial motion performed that function. See *People v. Groves*, 294 Ill. App. 3d 570, 574, 691 N.E.2d 86, 89 (1998) ("We find the issue was properly preserved since [the] defendant stated in his posttrial motion that the court erred in admitting his out-of-court statements"). Therefore, we disagree with the State that defendant has forfeited this issue.

### 2. *Tampering With, or Altering, the Substance*

Section 401 of the Controlled Substances Act provides: "Except as authorized by this Act, it is unlawful for any person knowingly to \*\*\* possess[,] with intent to \*\*\* deliver, a controlled substance \*\*\*." 720 ILCS 570/401 (West 2006). Cocaine is, of course, a controlled substance. 720 ILCS 570/102(f), 206(b)(4) (West 2006). The punishment for possession of a controlled substance with the intent to deliver it depends on how much of it the defendant possessed—or, more precisely, how much of *a substance containing a controlled substance* he possessed. 720 ILCS 570/401(a) (West 2006). Section 401(a)(2)(D) provides as follows:

"(a) Any person who violates this [s]ection with respect to the following amounts of controlled \*\*\* substances \*\*\* is guilty of a Class X felony and shall be sentenced to a term of imprisonment as provided in this subsection (a) and fined as provided in subsection (b):

\* \* \*

(2) \*\*\*

\* \* \*

(D) not less than 15 years and not more than 60 years with respect to 900 grams or more of *any substance containing cocaine* \*\*\*." (Emphasis added.) 720 ILCS 570/401(a)(2)(D) (West 2006).

From these statutory provisions, it should be apparent that a police officer's mixing substances together at the crime scene is not necessarily a matter of indifference to the defendant. The greater the amount of illegal substance the defendant possesses, the greater the crime—and, for that reason, the State must prove, beyond a reasonable doubt, the weight of the substance containing the drug. *People v. Jones*, 174 Ill. 2d 427, 428-29, 675 N.E.2d 99, 100 (1996). If the police

seize separate bags or containers of suspected drugs, they must test a sample from each bag or container to prove it contains a controlled substance. *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 101.

There is an exception to this requirement: "random testing is permissible when the seized samples are sufficiently homogenous so that one may infer[,] beyond a reasonable doubt[,] that the untested samples contain the same substance as those that are conclusively tested." *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 100. For example, 3 out of 100 tablets are a "sufficiently homogenous" sample if all the tablets have "identical markings, lettering characteristics, bevelling, and scoring." *Jones*, 174 Ill. 2d at 429, 675 N.E.2d at 100, citing *People v. Kaludis*, 146 Ill. App. 3d 888, 891-92, 497 N.E.2d 360, 362 (1986). *Jones* held, however, that five packets, each containing a white rocky substance, "[could not] be equated with identically marked and stamped tablets, pills, or capsules"; the State had to test a sample from each packet. *Jones*, 174 Ill. 2d at 430, 675 N.E.2d at 101. The same necessarily holds true of separate containers of white powder, which is even less distinctive, in its physical characteristics, than white rocks. The State must conclusively test a sample from each container of powder. *People v. Jones*, 260 Ill. App. 3d 807, 810, 633 N.E.2d 218, 221 (1994); *People v. Hill*, 169 Ill. App. 3d 901, 911, 524 N.E.2d 604, 611 (1988).

Contrary to the holding of the Third District in *People v. Jackson*, 134 Ill. App. 3d 785, 787, 481 N.E.2d 1222, 1224 (1985), the State cannot evade this requirement by the facile expedient of eliminating the multiplicity of containers, that is, dumping the contents of several containers into one container and then testing a sample from the one container. See *People v. Little*, 140 Ill. App. 3d 682, 686, 489 N.E.2d 322, 325 (1986) (Heiple, J., dissenting) ("The defendant correctly points out that when the contents of the 11 manila envelopes were combined by the police before they were individually weighed and tested, *** the prosecution lost any basis to charge the defendant with possession of any specific quantity of a substance containing cannabis as to those 11 envelopes. The State, after all, is required to prove its case beyond a reasonable doubt. We may speculate that each of those 11 envelopes contained cannabis. That, however, amounts to guess and conjecture[,] which will not do. It is possible that only one of those 11 envelopes contained cannabis").

To illustrate what we mean, assume the police find two bags on a kitchen table. One is a Baggie containing 15 grams of a substance containing cocaine. The other is a freezer bag containing 900 grams of pure baking soda, with no intermixture of cocaine. For the 15 grams in the Baggie, the defendant faces imprisonment for 6 to 30 years. 720

ILCS 570/401(a)(2)(A) (West 2006). For the 900 grams of baking soda in the freezer bag, he faces no punishment at all—for these are two physically separate substances and baking soda is not a controlled substance. If, before the police arrived, the defendant dumped the contents of the Baggie into the freezer bag, the two substances would become one substance—*i.e.*, 915 grams of a substance containing cocaine—and he would face a greater penalty of 15 to 60 years' imprisonment. 720 ILCS 570/401(a)(2)(D) (West 2006). Obviously, the defendant would not want the police doing this commingling for him.

If, to alter the hypothetical, the freezer bag already contained cocaine mixed in with the baking soda, it would make no practical difference that the contents of the two bags were consolidated, for both bags, to begin with, separately contained a substance containing cocaine and the criminal liability would be the same regardless of whether the contents of the two bags remained separate or were consolidated.

For purposes of the chain of custody, if the evidence in question is an illegal substance, "tampering with," or "altering," the evidence means causing it, to the defendant's legal detriment, to be a substance different from that which the police recovered from him. *Woods*, 214 Ill. 2d at 468, 828 N.E.2d at 255. "The State must show that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic chemist." *Woods*, 214 Ill. 2d at 467, 828 N.E.2d at 255. The addition of a minuscule amount of cocaine to 900 grams of an innocuous substance would create a crushing criminal liability.

Thus, whether Dailey "tampered with," or "altered," the evidence depends on whether all 15 bags contained cocaine before he emptied them into one evidence bag. Initially, there were 15 physically separate substances. Were all 15 substances cocaine or a substance containing cocaine? Defense counsel stipulated as follows: "[B]ased upon the tests he performed [and] his expertise[,] Michael Cravens was able to determine[,] to a reasonable degree of scientific certainty[,] that the white powder in People's [e]xhibit [No.] 2 was 926.0 grams of cocaine." Like the trial court, we take that stipulation at face value. See *People v. Williams*, 200 Ill. App. 3d 503, 516, 558 N.E.2d 261, 269 (1990) (declining to subject to further scrutiny a forensic chemist's stipulated testimony that " 'the white powder' was in fact cocaine"); *People v. Early*, 158 Ill. App. 3d 232, 239, 511 N.E.2d 847, 852 (1987) (stipulations concerning evidence are "binding and conclusive on the parties"). If, as the parties stipulated, all of the white powder in People's exhibit No. 2 was cocaine, it follows that all of the white powder in the 15 bags was cocaine, for People's exhibit No. 2 consisted

of the contents of the 15 bags. Dailey did not "tamper with, or alter," the 15 substances by mixing them together (the 15 substances were identical: they all were cocaine).

As the supreme court explained in *Woods*, 214 Ill. 2d at 468, 828 N.E.2d at 255, "the State establishes a *prima facie* showing that the chain of custody for controlled substances is sufficient by meeting its burden to establish that reasonable protective measures were taken to ensure that the evidence has not been tampered with, substituted[,] or altered between the time of seizure and forensic testing." The State made that *prima facie* showing in this case. Dailey testified he dumped the substances into an evidence bag, sealed the bag, and put it in a vault. The bag remained sealed until Cravens opened it, and he did not alter the contents of the bag. "After the State establishes a *prima facie* case, the burden then shifts to the defendant to produce evidence of actual tampering, alteration[,] or substitution." *Woods*, 214 Ill. 2d at 468, 828 N.E.2d at 256. As we have explained, defendant failed to carry his burden of producing evidence of actual tampering, alteration, or substitution. Mixing the 15 quantities of cocaine together did not change the substance so as to increase criminal liability: it always was, and remained, cocaine. Therefore, we find a sufficient chain of custody.

## B. The Necessity of Adducing Evidence Outside the Record To Prove Ineffectiveness of Trial Counsel

Defendant argues his trial counsel rendered ineffective assistance by stipulating that "based on the tests he performed ***[,] Michael Cravens was able to determine[,] to a reasonable degree of scientific certainty[,] that the white powder in People's exhibit [No.] 2 was 926.0 grams of cocaine." To prove ineffective assistance of counsel, defendant must prove two propositions: (1) counsel's representation "fell below an objective standard of reasonableness" (*Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ Because it is impossible to prove ineffective assistance of counsel without proving both the deficiency of counsel's performance and prejudice therefrom, a court may proceed directly to the question of prejudice without assessing counsel's performance. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. On the record before us, we are unable to find a reasonable probability that if defense

counsel had declined to enter into the stipulation, the result of the proceeding would have been different. The purpose of the stipulation was to make it unnecessary for Cravens to testify. It seems reasonable to suppose that, absent the stipulation, the State would have called Cravens. To prove prejudice, defendant would have to prove that, absent the stipulation, there is a reasonable probability that the State would not have called Cravens or, if the State had called him, he could not have opined to a reasonable degree of scientific certainty that the white powder in People's exhibit No. 2 was 926 grams of cocaine. The record does not appear to contain any laboratory reports. To prove prejudice, defendant would have to adduce evidence that is outside the record. Therefore, we decline to consider the merits of his claim of ineffective assistance, which is best reserved for postconviction proceedings. See *People v. Holloman*, 304 Ill. App. 3d 177, 186-87, 709 N.E.2d 969, 975-76 (1999); *People v. Morris*, 229 Ill. App. 3d 144, 166, 593 N.E.2d 932, 947 (1992).

### C. Defense Counsel's Ineffectual Waiver of Defendant's Presence During Discussions of Notes From the Deliberating Jury

Defendant argues that discussing the notes from the deliberating jury outside his personal presence violated his "constitutional right to a public trial, and to appear and participate *in person and by counsel* at all proceedings that involve his substantial rights." (Emphasis in original.) *People v. McDonald*, 168 Ill. 2d 420, 459, 660 N.E.2d 832, 849 (1995). Initially, we must determine precisely when, during the proceedings, defendant was absent. When discussing the second note, the trial court did not say defendant was present; nor did the court say he was absent. If the record shows the presence of the defendant when the trial commences, we presume he was present throughout the trial unless the record specifically says otherwise. *Gallagher v. People*, 211 Ill. 158, 171, 71 N.E. 842, 847 (1904); *People v. Robinson*, 258 Ill. App. 50, 52 (1930); *People v. Harvey*, 95 Ill. App. 3d 992, 999, 420 N.E.2d 645, 651 (1981). The record shows defendant was present when the trial began. The record does not specifically exclude his presence during the discussion of the second note. Therefore, we presume he was present at that time. See *Harvey*, 95 Ill. App. 3d at 999-1000, 420 N.E.2d at 651-52.

The record specifically says, however, that defendant was absent during the discussion of the third note, when defense counsel purported to waive defendant's right to be personally present. Defense counsel had no power to effect that waiver. See *People v. McGrane*, 336 Ill. 404, 409, 168 N.E. 321, 323 (1929) (defense counsel had no power to waive the defendant's presence when the trial court instructed the

jury in response to its request for further instructions); *People v. Lofton*, 194 Ill. 2d 40, 66, 740 N.E.2d 782, 797 (2000). "[A] communication between the judge and the jury after the jury has retired to deliberate, except one held in open court and in [the] defendant's presence, deprives [the] defendant of [his] fundamental rights [to be present at and to participate in a critical stage of the trial]." *McDonald*, 168 Ill. 2d at 459, 660 N.E.2d at 849.

■ Reversal is unwarranted if it is apparent that no injury or prejudice resulted. *McDonald*, 168 Ill. 2d at 460, 660 N.E.2d at 849; *People v. Kubat*, 94 Ill. 2d 437, 493-94, 447 N.E.2d 247, 272 (1983); *People v. Pierce*, 56 Ill. 2d 361, 365, 308 N.E.2d 577, 579 (1974). The burden is on the State to prove the error was harmless beyond a reasonable doubt. *McDonald*, 168 Ill. 2d at 460, 660 N.E.2d at 849. The State has carried that burden. The jury requested a definition of "abet," and with the concurrence of defense counsel, the trial court gave the jury an accurate definition. "[W]e believe that [defendant's] presence at the conference, in which his rights were adequately protected, would not have had a 'relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.' " *Kubat*, 94 Ill. 2d at 493-94, 447 N.E.2d at 272, quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 78 L. Ed. 674, 678, 54 S. Ct. 330, 332 (1934).

### D. Vacation of the Inchoate Offense and the Included Offense

■ The State concedes that because defendant was convicted of count VIII, unlawful delivery of a controlled substance (720 ILCS 570/401(a)(2)(D) (West 2006)), his conviction of the inchoate offense, count X, criminal drug conspiracy (720 ILCS 570/405.1(a) (West 2006)), cannot stand. See *People v. Castaneda*, 299 Ill. App. 3d 779, 781, 701 N.E.2d 1190, 1191 (1998). We find this concession to be correct. "No person shall be convicted of both the inchoate and the principal offense." 720 ILCS 5/8—5 (West 2006). Therefore, we vacate the conviction of count X. See *Castaneda*, 299 Ill. App. 3d at 781, 701 N.E.2d at 1191.

The State further concedes that because defendant was convicted of count VIII, unlawful delivery of a controlled substance (720 ILCS 570/401(a)(2)(D) (West 2006)), his conviction of count VII, unlawful possession of a controlled substance with the intent to deliver it (720 ILCS 570/401(a)(2)(D) (West 2006)), cannot stand. We find this concession to be correct as well. The offense of unlawful possession of a controlled substance with intent to deliver is included in the offense of unlawful delivery of a controlled substance (for, in order to deliver a controlled substance, one must possess it with the intent to deliver it).

*People v. Garcia*, 195 Ill. App. 3d 621, 631, 552 N.E.2d 1171, 1177 (1990). Therefore, we vacate the conviction of count VII. See *Garcia*, 195 Ill. App. 3d at 631, 552 N.E.2d at 1178.

## E. The Legality of the Fines

■ Defendant argues that under section 401(b) of the Controlled Substances Act (720 ILCS 570/401(b) (West 2006)), the trial court had authority to impose only a fine of "not more than $500,000," *i.e.*, the fine of $92,600, and that we should vacate the other fine, the fine of $1 million. By reference to statutory language, legislative history, and case law, we will explain why we construe section 401(b) of the Controlled Substances Act and section 5—9—1.1(a) of the Unified Code (730 ILCS 5/5—9—1.1(a) (West 2006)) to authorize the two fines.

### 1. *The Statutory Language*

Section 401(b) of the Controlled Substances Act provides as follows:

> "(b) Any person sentenced with respect to violations of paragraph *** (2) *** of subsection (a) involving 100 grams or more of the controlled substance named therein, may[,] in addition to the penalties provided therein, be fined an amount not more than $500,000 or the full street value of the controlled *** substance ***, whichever is greater." 720 ILCS 570/401(b) (West 2006).

Because section 401(b) says a violator "may *** be fined," a fine under this statute is discretionary. See *In re Marriage of Freeman*, 106 Ill. 2d 290, 298, 478 N.E.2d 326, 329 (1985) ("Except in very unusual circumstances affecting the public interest, the legislative use of the word 'may' is permissive rather than mandatory"). Section 401(b) does not specify the minimum amount of the fine. It specifies only the maximum amount, and the maximum amount depends on the street value of the controlled substance. If the street value is less than $500,000, the maximum fine is $500,000. If the street value is more than $500,000, the maximum fine is the street value. In this case, the street value of the cocaine was $92,600, which was less than $500,000. It follows that section 401(b) authorized the fine of $92,600 but not the fine of $1 million (because $1 million was more than $500,000).

Even though the trial court imposed a fine of $92,600 as authorized by section 401(b) of the Controlled Substances Act (720 ILCS 570/401(b) (West 2006)), the language of section 5—9—1.1(a) of the Unified Code (730 ILCS 5/5—9—1.1(a) (West 2006)) not only authorized but required an additional fine. Section 5—9—1.1(a) provides as follows:

> "(a) When a person has been adjudged guilty of a drug[-]related offense involving *** possession or delivery of a controlled

substance, *** *in addition to any other penalty imposed,* a fine *shall* be levied by the court at not less than the full street[-]value of the *** controlled substances seized." (Emphasis added.) 730 ILCS 5/5—9—1.1(a) (West 2006).

Defendant was adjudged guilty of a drug-related offense involving delivery of a controlled substance. The statute directs that "in addition to any other penalty imposed, a fine shall be levied." The phrase *"any other* penalty" signifies it does not matter what kind of penalty the other penalty is. A fine is a penalty. Even if the defendant already has incurred a fine under another statute, the court "shall" impose a fine under section 5—9—1.1(a). See *People v. Thomas,* 171 Ill. 2d 207, 222, 664 N.E.2d 76, 84 (1996) ("use of the word 'shall' indicates a mandatory obligation unless the statute indicates otherwise"). A fine of $92,600 pursuant to section 401(b) of the Controlled Substances Act (720 ILCS 570/401(b) (West 2006)) was another "penalty imposed." In addition to that fine, section 5—9—1.1(a) required another fine.

Defendant cites *People v. Harmison,* 108 Ill. 2d 197, 204-05, 483 N.E.2d 508, 511-12 (1985), for the proposition that section 5—9—1.1(a) (730 ILCS 5/5—9—1.1(a) (West 2006)) requires the imposition of a street-value fine. The supreme court did not so hold in that case. In *Harmison,* 108 Ill. 2d at 200, 483 N.E.2d at 509-10, the trial court imposed a street-value fine pursuant to section 5—9—1.1, and the supreme court upheld the fine against the defendant's constitutional challenges (*Harmison,* 108 Ill. 2d at 204-06, 483 N.E.2d at 511-12). The supreme court never held, however, that the amount of the fine was limited to the street value of the drug. The supreme court said that street value affected the amount of the fine (*Harmison,* 108 Ill. 2d at 205, 483 N.E.2d at 512)—as the statute says, the fine shall be *"not less than* the full street value of the *** controlled substances seized." (Emphasis added.) 730 ILCS 5/5—9—1.1(a) (West 2006). The supreme court never held, however, that the fine had to equal the street value.

"The best indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning." *People v. Lewis,* 223 Ill. 2d 393, 402, 860 N.E.2d 299, 305 (2006). In section 5—9—1.1(a), the legislature specified only the minimum amount of the fine, not the maximum amount: a fine "at *not less than* the full street[-] value of the *** controlled substances seized." (Emphasis added.) 730 ILCS 5/5—9—1.1(a) (West 2006). In such statutes, in which only the minimum amount of the fine is specified, constitutional limitations determine the maximum amount. *State v. Taylor,* 70 S.W.3d 717, 721-22 (Tenn. 2002) (and cases cited therein). Defendant does not argue that a fine in the amount of $1 million violates the excessive-

fines clause (U.S. Const., amend. VIII) or that the fine is otherwise unconstitutional; he argues only that the fine is statutorily unauthorized. We conclude that, on its face, section 5—9—1.1(a) authorizes the $1 million fine—for $1 million is an amount "not less than" the street value of the cocaine, $92,600.

Defendant further argues the trial court erred by failing to consider his ability to pay $1 million. He cites section 5—9—1(d)(1) of the Unified Code, which says that "[i]n determining the amount and method of payment of a fine, *** the court shall consider *** the financial resources and future ability of the offender to pay the fine." 730 ILCS 5/5—9—1(d)(1) (West 2006). In context, however, section 5—9—1(d)(1) seems to be speaking of a fine imposed under section 5—9—1(a) (730 ILCS 5/5—9—1(a) (West 2006)), *i.e.*, a fine for general felonies, misdemeanors, petty offenses, and business offenses. Section 5—9—1.1 (730 ILCS 5/5—9—1.1 (West 2006)) is a separate section of the Unified Code, contemplating a different fine—a fine specifically for drug offenses. We are aware of no authority for the general proposition that a fine must be affordable for its recipient.

## 2. *Legislative History*

Public Act 82—449 (Pub. Act 82—449, eff. January 1, 1982 (1981 Ill. Laws 2352-54)) consisted of three sections. Section 1 (Pub. Act 82—449, §1, eff. January 1, 1982 (1981 Ill. Laws 2352, 2353)) added subsection (a)(6) to section 110—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 110—5), a section entitled "Determining the amount of bail." The new subsection (a)(6) provided that when a person was charged with a drug-related offense involving possession or delivery of cannabis or a controlled substance, "the full street value of the drugs seized shall be considered." Pub. Act 82—449, §1, eff. January 1, 1982 (1981 Ill. Laws 2352, 2353).

Section 2 of Public Act 82—449 (Pub. Act 82—449, §2, eff. January 1, 1982 (1981 Ill. Laws 2352, 2353-54)) added two new sections to the Unified Code. The two sections were codified as paragraphs 1005—9—1.1 and 1005—9—1.2 of chapter 38 of the Illinois Revised Statutes (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—9—1.1, 1005—9—1.2). Section 5—9—1.1 required the imposition of a fine, and section 5—9—1.2 said where the proceeds of the fine would go:

"(Ch. 38, new par. 1005—9—1.1)

Sec. 5—9—1.1. When a person has been adjudged guilty of a drug[-]related offense involving possession or delivery of cannabis or possession or delivery of a controlled substance as defined in the Cannabis Control Act [(Ill. Rev. Stat. 1981, ch. 56½, pars. 701 through 719)], as amended, or the Illinois Controlled Substances Act [(Ill. Rev. Stat. 1981, ch. 56½, pars. 1101 through 1603)], as

amended, in addition to any other penalty imposed, a fine shall be levied by the court at not less than the full street value of the cannabis or controlled substances seized.

'Street value' shall be determined by the court on the basis of testimony of law[-]enforcement personnel and the defendant as to the amount seized and such testimony as may be required by the court as to the current street value of the cannabis or controlled substance seized.

(Ch. 38, new par. 1005—9—1.2)

Sec. 5—9—1.2. The proceeds of all fines received under provisions of [s]ection 5—9—1.1 shall be transmitted to and deposited in the treasurer's office at the level of government represented by the Illinois [l]aw[-e]nforcement [a]gency which filed the charge or charges in each seizure, to be subsequently made available to the Illinois [l]aw[-e]nforcement [a]gency filing the charge or charges as expendable receipts for use in the enforcement of laws regulating controlled substances or cannabis. If such seizure was made by a combination of law[-]enforcement personnel representing different levels of government, the court levying the fine shall determine the allocation of such fine.

The proceeds of fines awarded to the State Treasury shall be deposited in a special fund known as the 'Drug Traffic Prevention Fund.'

Monies from this fund may be used by the Department of Law Enforcement for use in the enforcement of laws regulating controlled substances and cannabis; to satisfy funding provisions of the Intergovernmental Drug Laws Enforcement Act [(Ill. Rev. Stat. 1981, ch. 56½, pars. 1701 through 1706)]; to defray costs and expenses associated with returning violators of the Cannabis Control Act and the Illinois Controlled Substances Act only, as provided in those [a]cts, when punishment of the crime shall be confinement of the criminal in the penitentiary; and all other monies shall be paid in to the general revenue fund in the State Treasury." Pub. Act 82—449, §2, eff. January 1, 1982 (1981 Ill. Laws 2352, 2353-54).

In 1982, when the General Assembly passed Public Act 82—449 and the Governor signed it into law, section 401 of the Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401) already allowed a trial court to impose a fine. Section 401(a) provided it was unlawful to knowingly manufacture or deliver, or possess with the intent to manufacture or deliver, a controlled substance. Ill. Rev. Stat. 1981, ch. 56½, par. 1401. Section 401(a)(2) provided that the fine for 30 grams or more of a substance containing cocaine "[should] not be more than $200,000." Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)(2).

For lesser amounts of controlled substance, the maximum fine was less. Ill. Rev. Stat. 1981, ch. 56½, pars. 1401(b), (c), (d), (e), (f), (g). By its terms, section 401 did not require a minimum fine—or any fine at all; it merely specified the maximum fine a trial court could impose for different quantities of narcotics. Further, in 1981, the Controlled Substances Act did not specify where the proceeds of a fine pursuant to section 401 would go.

Effective January 1, 1990, section 1 of Public Act 86—442 (Pub. Act. 86—442, §1, eff. January 1, 1990 (1989 Ill. Laws 2681, 2681-87)) rewrote section 401 of the Controlled Substances Act. Before the amendment, section 401(b) said that "[t]he fine for violation of this subsection (b) shall not be more than $250,000." Ill. Rev. Stat. 1989, ch. 56½, par. 1401(b). The amendment changed subsection (b) to read substantially as it reads today: the defendant "may *** be fined an amount not more than $500,000 or the full street[-]value of the controlled *** substance ***, whichever is greater" (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(b)).

Thus, section 401 of the Controlled Substances Act predates sections 5—9—1.1 and 5—9—1.2 of the Unified Code. Under section 401, a fine was discretionary. Then section 5—9—1.1 was enacted, which required a fine. After the enactment of section 5—9—1.1, section 401(b) was amended to read substantially as it reads today. A fine under section 401(b), as amended, still is discretionary.

### 3. *Remarks by Legislators*

Public Act 82—449, which added sections 5—9—1.1 and 5—9—2.2 to the Unified Code, began as House Bill 249 in the 1981 session of the Eighty-second General Assembly. On May 6, 1981, Representative Stearney pointed out to one of the bill's sponsors, Representative Yourell, that section 401(a) of the Controlled Substances Act (Ill. Rev. Stat. 1981, ch. 56½, par. 1401(a)) already allowed a trial court to fine a drug trafficker up to $200,000. 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 23-24 (statements of Representative Stearney). (Representative Stearney said "[c]hapter 38," but apparently he meant chapter 56½.) Representative Stearney asked: "[H]ow many times can you fine an individual[?] You sentence them once to prison, [and] then you fine them $200,000[,] and now you fine [them in] an amount equal to the street value of the drug. Is that your thinking, Mr. Yourell?" Representative Yourell replied: "Well, as you read the statute and the [a]mendment correctly[,] it indicates that *in addition to any fine imposed by the judge*[,] it has to at least be in the amount of the drugs confiscated[,] and that's what we're after." (Emphasis added.) 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 24 (state-

ments of Representatives Stearney and Yourell). Representative Yourell explained that the purpose of the additional, mandatory fine was to create a Drug Traffic Prevention Fund, to be used in the interdiction of drug trafficking. 82d Ill. Gen. Assem., House Proceedings, May 6, 1981, at 24 (statements of Representative Yourell).

The Senate added an amendment to House Bill 249 so that instead of requiring a fine in the amount of the street value of the drugs seized, the legislation would require a fine "at not less than" the street value. 82d Ill. Gen. Assem., Senate Proceedings, June 18, 1981, at 116 (statements of Senator Berman). The House accepted this amendment to the bill, and in their discussion of the amendment, Representative Yourell and Huff expressed concern that trial courts were not imposing bail and fines in amounts high enough to disrupt the operations of immensely wealthy drug traffickers. 82d Ill. Gen. Assem., House Proceedings, June 28, 1981, at 110-11 (statements of Representatives Yourell and Huff).

### 4. *Analogous Cases*

In *People v. Seidel*, 138 Ill. App. 3d 616, 619, 485 N.E.2d 1330, 1333 (1985), the defendant argued that the enactment of section 10.1 of the Cannabis Control Act (Ill. Rev. Stat. 1983, ch. 56½, par. 710.1) and section 411.1 of the Controlled Substances Act (Ill. Rev. Stat. 1983, ch. 56½, par. 1411.1), both of which authorized a discretionary fine, impliedly repealed the earlier-existing section 5—9—1.1 of the Unified Code (Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1), which provided for a mandatory fine. For two reasons, the Third District disagreed with the defendant. First, all three statutes referred to levying a fine " 'in addition to any other penalty' imposed by the court." *Seidel*, 138 Ill. App. 3d at 620, 485 N.E.2d at 1333, quoting Ill. Rev. Stat. 1983, ch. 38, par. 1005—9—1.1, and Ill. Rev. Stat. 1983, ch. 56½, pars. 710.1(a), 1411(a). To the extent possible, one had to construe a statute in such a way that no clause was meaningless or superfluous. *Seidel*, 138 Ill. App. 3d at 620, 485 N.E.2d at 1333. "[B]y the statutes' very terms, a court could certainly impose a fine under both statutes" (by which the Third District apparently meant section 5—9—1.1 of the Unified Code and section 10.1 of the Cannabis Control Act or section 5—9—1.1 of the Unified Code and section 411.1 of the Controlled Substances Act). *Seidel*, 138 Ill. App. 3d at 620, 485 N.E.2d at 1333. The defendant's interpretation would have rendered the phrase "in addition to any other penalty" meaningless or superfluous. Second, when adopting sections 10.1 and 411.1 as House Bill 321, senators made clear, in their remarks, that the mandatory-fine provision in section 5—9—1.1 was to be applied in conjunction with the discretionary-

fine provisions in sections 10.1 and 411.1. *Seidel*, 138 Ill. App. 3d at 620-21, 485 N.E.2d at 1333-34.

The Second District reached the same conclusion as the Third District: in drug cases, statutory law required one fine and allowed an additional fine. *People v. Moffitt*, 138 Ill. App. 3d 106, 117-18, 485 N.E.2d 513, 522 (1985); *People v. Gorski*, 144 Ill. App. 3d 284, 290, 494 N.E.2d 246, 250 (1986). The Second District held that "the mandatory fine [was] to be first imposed and then a discretionary fine [could] be levied by the court." *Gorski*, 144 Ill. App. 3d at 290, 494 N.E.2d at 250.

Like section 10.1 of the Cannabis Control Act (720 ILCS 550/10.1 (West 2006)) and section 411.1 of the Controlled Substances Act (720 ILCS 570/411.1 (West 2006)), section 401(b) of the Controlled Substances Act gives the trial court discretion to impose a fine (720 ILCS 570/401(b) (West 2006) ("may *** be fined")). Because the mandatory fine in section 5—9—1.1 of the Unified Code is to be "in addition to any other penalty" (730 ILCS 5/5—9—1.1 (West 2006)), the reasoning of the appellate court in *Seidel*, *Moffitt*, and *Gorski* applies to sections 5—9—1.1 and 401(b): the two provisions authorize separate and simultaneous fines, one of which is mandatory and the other discretionary.

We agree with the Third District that this interpretation is problematic. *Moffitt*, 138 Ill. App. 3d at 118, 485 N.E.2d at 522. There would seem to be little point in saying, in section 401(b) of the Controlled Substances Act (720 ILCS 570/401(b) (West 2006)), that a trial court does not have to impose a fine but if the court chooses to impose one, it can be no more than the street value of the drugs, only to turn around and say, in section 5—9—1.1(a) of the Unified Code (730 ILCS 5/5—9—1.1(a) (West 2006)), that the court must impose a separate fine in at least the amount of the street value of the drug— and the fine can be greater. How much greater, the legislature does not say, but case law suggests that we are to understand the limit to be whatever the constitution allows (*Taylor*, 70 S.W.3d at 721-22). Despite these problems, we agree, for the reasons we have discussed, that the alternative interpretation, namely, an implied repeal of section 401(b), is untenable, especially considering that the legislature amended section 401(b) after passing Public Act 82—449.

### F. Defendant's Request for a Resentencing Hearing

■ In his brief, defendant argues that vacating the convictions of counts VII and X will make it necessary for us to remand this case for resentencing. Resentencing would be necessary if the severity of the sentence on count X, unlawful delivery of a controlled substance,

rested on the assumption that defendant was guilty of separate crimes, each meriting a separate punishment. See *People v. Carmickle*, 46 Ill. App. 3d 112, 115, 360 N.E.2d 794, 797 (1977). In this case, the trial court imposed identical 25-year concurrent terms of imprisonment for the three counts, as if recognizing that the three counts described essentially the same misconduct. "[T]he sentences imposed in this case were not so interrelated as to require a new sentencing hearing." *People v. Hagan*, 199 Ill. App. 3d 267, 291, 556 N.E.2d 1224, 1240 (1990).

## G. Presentence Credit

■ Defendant argues he is entitled to presentence credit for eight additional days, from March 22 to 29, 2006, when he was in jail because of the present offense but not yet charged as well as an additional $40 credit ($5 per day) against fines. The State concedes the merit of this argument, and we find the concession to be justified. "The offender shall be given credit on the determinate sentence *** for time spent in custody as a result of the offense for which the sentence was imposed ***." 730 ILCS 5/5—8—7(b) (West 2006). "[O]nce a defendant is arrested for an offense[,] he or she is clearly 'in custody' for that offense even before he or she is formally charged." *People v. Roberson*, 212 Ill. 2d 430, 439, 819 N.E.2d 761, 766 (2004). In this case, the parties stipulated that the police arrested defendant on March 22, 2006, when they executed the search warrant. The parties further stipulated that the reason for the arrest was the offense for which the trial court sentenced defendant in this case. Therefore, we modify the judgment so as to award defendant an additional eight days of presentence credit and an additional $40 credit against his $3,000 mandatory drug-treatment assessment. We direct the court to amend the sentencing order accordingly.

We note that the original sentencing order says, incorrectly, that defendant has prior drug convictions. In the sentencing hearing on October 24, 2007, the State conceded that the alleged prior drug convictions were unproved. The presentence report reveals no prior drug convictions. Therefore, the amended sentencing order should omit from count VIII any reference to a prior unlawful-possession-of-controlled-substance conviction.

## III. CONCLUSION

For the foregoing reasons, we vacate the convictions of counts VII and X of the additional information and modify the judgment so as to allow eight more days of presentence credit and an additional $40 credit against his mandatory drug-treatment assessment. We direct the trial court to amend the sentencing order accordingly, omitting

any reference to a prior conviction of unlawful possession of a controlled substance. Otherwise, we affirm the judgment. We award the State $50 against defendant in costs.

Affirmed in part as modified and vacated in part; cause remanded with directions.

MYERSCOUGH and STEIGMANN, JJ., concur.