FIRST DIVISION
November 5, 2007

No. 1-06-0446

THE PEOPLE OF THE STATE OF ILLINOIS,     )     Appeal from the
                                         )     Circuit Court of
     Plaintiff-Appellee,                 )     Cook County.
                                         )
          v.                             )
                                         )
RODNEY LOVE,                             )     Honorable
                                         )     Marjorie C. Laws,
     Defendant-Appellant.                )     Judge Presiding.


     JUSTICE WOLFSON delivered the opinion of the court:

     Following a jury trial, defendant Rodney Love was found

guilty of first degree murder and sentenced to a 30-year prison

term.  Defendant's sentence was enhanced an additional 25 years

because a firearm was used to commit the offense.  On appeal,

defendant contends: (1) he received ineffective assistance of

trial counsel; (2) he was prejudiced by the prosecutor's improper

comments; (3) the trial court erred in allowing the State to

present evidence of "Major Case" prints, which created an

inference of significant criminal history; and (4) the trial

court coerced the jury into reaching a verdict.  We affirm the

defendant's conviction and sentence.

FACTS

     On August 28, 2002, Lyphus Pouncy stopped his car at a

traffic light at 51st Street and Morgan.  A male rode a bicycle

up to the passenger side window and fired two shots into the car,

killing Pouncy.

On September 7, 2002, Chicago Police Officers Lori Bechina and Carolyn Keating were conducting on-street interviews regarding several murders in the area when they saw defendant remove a black object from his waistband, drop it to the ground, and run. Officer Bechina chased after him. When Officer Keating went to where defendant had been standing, she recovered a .45 caliber semi-automatic handgun. After chasing defendant to his grandmother's house, Officer Bechina placed him in custody. The officers recovered a clear plastic sandwich baggie from defendant's pocket. The bag held 20 small knotted packets, each containing a white rock-like substance. The handgun recovered by Officer Keating was determined to have been used in the victim's shooting.

Chris Young, the victim's cousin, testified at trial that he could see the 51st Street and Morgan intersection from his third floor apartment window. At around 3:15 p.m., he was looking out the window when he saw the victim drive up to the traffic light in a green car. Young saw a dark-skinned male with braided hair ride a girl's bicycle towards the passenger side of the victim's car. Young had never seen the person before. Although Young had an unobstructed view of the person's face, he could not tell the person's height or weight. Young saw the male on the bike pull a gun from his waistband and fire two shots at the victim. Young

2

identified defendant in a lineup as the person who shot the victim.  Young also identified defendant at trial.  Young identified a girl's bike in a photograph as similar to the bike he saw defendant riding during the shooting.  Young admitted he saw the bike in the photograph at the police station on the day he participated in the lineup.  The photograph, which was admitted as People's Exhibit 18, depicts a purple girl's bicycle with white tires.  Young was on house arrest for a weapon charge when he witnessed the murder.  Young admitted defendant was the only individual in the lineup with braided hair.

Ronald Neal, a friend of the defendant, testified he and defendant sold drugs out of the defendant's grandmother's house on West 51st Street.  Defendant was a member of the Black P Stone gang, which was feuding with the Bar None Stones.  In July 2002, a Bar None gang member shot defendant's cousin in the foot.  Defendant pointed out the victim to Nash once or twice after his cousin's shooting, saying "stay away from the Bar Nones."  Neal said he did not know the victim; however, on cross-examination he admitted serving time with the victim in the juvenile department of corrections.

On August 28, 2002, Neal, defendant, and Derek Nash were hanging out at the defendant's grandmother's house playing video games and selling drugs.  Nash, who was the defendant's cousin, was dark-skinned and had braided hair.  At around 3:15 p.m.,

defendant told Neal he was leaving to buy drugs. He left the house on a purple girl's bicycle with white tires while wearing a white t-shirt, blue jean shorts, and his hair in braids. Neal saw the defendant tuck a .45 caliber handgun into his waistband. A few minutes later Neal heard two gunshots. Defendant returned a few minutes later sweating and shaking. He brought the bike into the house. Defendant told Neal he shot the victim. When Neal said he did not know who defendant meant, defendant said "the guy in the green car." Nash was shot and killed later that evening. Neal identified the bike depicted in People's Exhibit 18 as the bike he saw defendant riding on August 28.

Forensic scientist Kent Murray testified that he compared the recovered handgun with two shell casings recovered from the street where the shooting occurred. He concluded the shells were fired from the same gun. He could not determine whether the bullet recovered from the door of the victim's car had been fired from defendant's gun. A bullet core recovered from the victim's body was not suitable for comparison.

Defendant denied killing the victim. He testified that on August 28, 2002, he was at home all day with his grandmother, his father, his infant daughter, his infant daughter's mother, and a friend named Stephanie. Defendant said Nash and Neal came to his house around 2 p.m. After defendant gave them money to buy drugs, Neal and Nash left together. Neal came back alone a few

4

moments after defendant heard gunshots.  Neal told defendant Nash had shot someone.  According to defendant, Nash told him he shot the victim.  Defendant did not go to the police because Nash was shot and killed later that night.

Defendant testified the handgun recovered by the police belonged to Neal.  According to defendant, he was trying to buy the handgun from Neal when the police arrived.  When Neal saw the police officers, he placed the gun between defendant's legs and let it fall to the ground.  Defendant ran because he was afraid of getting caught with drugs.

The jury found defendant guilty of first degree murder.  The jury also found defendant personally discharged the firearm that caused the victim's death.  Following a sentencing hearing, the trial court sentenced defendant to a 30-year prison term for first degree murder.  Defendant was sentenced to an additional 25-year prison term pursuant to the sentencing enhancement. Defendant appeals.

DECISION

I. Ineffective Assistance

A defendant's claim for ineffective assistance of counsel has two components:

> "First, the defendant must show that
> counsel's performance was deficient.  This
> requires showing that counsel made errors so

5

> serious that counsel was not functioning as
> the 'counsel' guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must
> show that the deficient performance
> prejudiced the defense.  This requires
> showing that counsel's errors were so serious
> as to deprive the defendant of a fair trial,
> a trial whose result is reliable."
> Strickland v. Washington, 466 U.S. 668, 687,
> 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

A finding that one component has not been satisfied is fatal to defendant's claim as a whole.  Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  We first address the prejudice prong.  The defendant must show there is a reasonable probability, that is "a probability sufficient to undermine confidence in the outcome," (Strickland, 466 U.S. at 693-94, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068), that the result of the proceeding would have been different, but for defense counsel's errors.  People v. Stewart, 141 Ill. 2d 107, 118-19, 565 N.E.2d 968 (1990).  To prevail on an ineffectiveness claim for failure to file a motion to suppress, "defendant bears the burden of showing that the motion would have been granted and that the trial outcome would have been different if the evidence had been suppressed."  People v. Kelley, 304 Ill. App. 3d 628, 636, 710

1-06-0446

N.E.2d 163 (1999). Providing effective legal assistance does not require defense counsel to make losing motions. Kelley, 304 Ill. App. 3d at 636.

In a motion to suppress identification testimony, the defendant bears the burden of proving a pretrial identification was impermissibly suggestive. People v. Enis, 163 Ill. 2d 367, 398, 645 N.E.2d 856 (1994). "Only where a pretrial encounter resulting in an identification is 'unnecessarily suggestive' or 'impermissibly suggestive' so as to produce 'a very substantial likelihood of irreparable misidentification' is evidence of that and any subsequent identification excluded by law under the due process clause of the 14th amendment." People v. Moore, 266 Ill. App. 3d 791, 796-97, 640 N.E.2d 1256 (1994), citing Neil v. Biggers, 409 U.S. 188, 196-97, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972). Participants in a lineup are not required to be physically identical. People v. Saunders, 220 Ill. App. 3d 647, 666, 580 N.E.2d 1246 (1991).

Illinois courts have consistently held a lineup is not impermissibly suggestive simply because the defendant was the only person in the lineup with braided hair.

In People v. Trass, 136 Ill. App. 3d 455, 483 N.E.2d 567 (1985), the defendant argued he was not proved guilty beyond a reasonable doubt because the lineup was impermissibly suggestive. Defendant was the only person in the lineup with braided hair.

7

1-06-0446

The court found the lineup was not impermissibly suggestive because the police did not force the defendant to wear his hair in braids, and the braided hair was not such a distinguishing characteristic as to make the lineup "grossly suggestive." Trass, 136 Ill. App. 3d at 463.

In People v. Washington, 182 Ill. App. 3d 168, 175, 537 N.E.2d 1354 (1989), the court upheld the denial of defendant's motion to suppress where defendant was the only person in the lineup with braided hair. The court noted the police did not force the defendant to wear his hair in braids, and the witnesses provided accurate descriptions of the defendant beyond his hair. Washington, 182 Ill. App. 3d at 175. One witness correctly described the defendant's height and weight, while another accurately described defendant's facial hair. Washington, 182 Ill. App. 3d at 175.

In People v. Hartzol, 222 Ill. App. 3d 631, 642-43, 584 N.E.2d 291 (1991), the court applied the point from Trass and Washington to say that where the "defendant is not forced to wear his hair in braids and there are no other significant physical or racial differences among the participants," the lineup is not impermissibly suggestive. The court noted defendant's argument was especially weak because the witnesses testified the defendant's braids were styled differently in the lineup than they were at the time of the crime. Hartzol, 222 Ill. App. 3d at

8

643. The court upheld the trial court's denial of defendant's motion to suppress. Hartzol, 222 Ill. App. 3d at 642-43.

Here, defendant's lineup is somewhat different from the lineups in the cases because in Washington and Hartzol the witnesses provided a description of the criminal that was more complete and detailed than Young's. Nevertheless, it is not reasonably probable that a court would find defendant's lineup impermissibly suggestive based on defendant's hair.

Here, the facts indicate there was not a "substantial likelihood of irreparable misidentification." There is no evidence defendant was forced to wear braids at the lineup. All the participants in the lineup shared a similar skin tone and wore neutral clothing. Defendant does not claim any significant physical or racial differences existed, beyond his braided hair. Additionally, Young was able to see the criminal's face at the time of the crime; his identification of the defendant was not based solely on defendant's hair.

We have carefully reviewed the photographs of the lineup in question. We find no evidence of an attempt to focus the witness's attention on the defendant. We also note defense counsel made strategic use of the fact the defendant was the only one in the lineup with braids. Counsel used it to make the claim that Nash, not the defendant, was the shooter, since the evidence showed Nash also was dark-skinned and wore braids. The strategy

was unsuccessful, but it was sound.

We find the lineup was not impermissibly suggestive. There is no need to inquire into the admissibility of the in-court identification of the defendant by Young.

II. Prosecutorial Misconduct

Defendant contends the prosecutor made several improper comments during rebuttal closing arguments, including shifting the burden of proof, minimizing the burden of proof, improperly bolstering the credibility of the forensic witness, arguing defense counsel tried to mislead the jury, and arguing defendant's "flight" during his arrest could be considered consciousness of guilt. Defendant also contends the prosecution made an improper comment regarding other crimes evidence during his cross-examination.

Initially, the State contends any objection to the prosecutor's statements during closing argument and cross-examination was forfeited due to defendant's failure to properly raise the issues in his post-trial motion.

"To preserve claimed improper statements during closing argument for review, a defendant must object to the offending statements both at trial and in a written post-trial motion." People v. Wheeler, 226 Ill. 2d 92, 122, 871 N.E.2d 728 (2007), citing People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). After reviewing defendant's post-trial motion, we find

1-06-0446

defendant failed to properly preserve several of the prosecutorial misconduct issues he raises on appeal. Contrary to the State's contention, however, we find defendant properly preserved two of his prosecutorial misconduct issues--whether defense counsel was accused of trying to mislead the jury and whether the prosecution made an improper comment regarding other crimes evidence during his cross-examination.

Defendant contends we should review all of the prosecutorial misconduct issues under the plain-error doctrine. The plain-error doctrine allows us to address an unpreserved error when "either (1) the evidence was closely balanced, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." People v. Herron, 215 Ill. 2d 167, 178, 830 N.E.2d 467 (2005). Defendant contends both theories are applicable here. We disagree.

Here, Young identified defendant as the shooter in a lineup and at trial. Officer Keating testified she recovered a handgun defendant dropped to the ground before running from the police; the gun later was identified as the murder weapon. Neal testified defendant told him he shot the victim. We find the evidence was not closely balanced in this case. We also find the alleged instances of prosecutorial misconduct were not so serious that they denied defendant a fair trial. We therefore focus our attention on the statements properly preserved for appeal. See

11

1-06-0446

Wheeler, 226 Ill. 2d at 122.

Prosecutors are afforded wide latitude in closing argument. Wheeler, 226 Ill. 2d at 123. "The trial court's determination that closing arguments were proper will be upheld absent an abuse of discretion." People v. Williams, 228 Ill. App. 3d 981, 997, 593 N.E.2d 968 (1992). Prosecutorial misconduct warrants reversal only if it "caused substantial prejudice to the defendant, taking into account the content and context of the comments, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial." People v. Johnson, 208 Ill. 2d 53, 115, 803 N.E.2d 405 (2004). A prosecutor's comments during rebuttal argument will not be deemed improper, however, if they were invited by defense counsel's closing argument. People v. Bakr, 373 Ill. App. 3d 981, 990, 869 N.E.2d 1010 (2007); People v. Watson, 342 Ill. App. 3d 1089, 1093, 796 N.E.2d 1087 (2003).

A. Defense Counsel Tried to Mislead the Jury

Defendant contends the prosecutor improperly accused defense counsel during rebuttal argument of acting "ridiculous" and focusing on "nonsense" instead of facts or evidence. Defendant also contends the prosecutor's comment that "[the defense] want[s] to distract you" improperly suggested defense counsel was trying to free his client through deception and trickery.

12

"Unless predicated on evidence that defense counsel behaved unethically, it is improper for a prosecutor to accuse defense counsel of attempting to create reasonable doubt by confusion, misrepresentation, or deception." People v. Johnson, 208 Ill. 2d 53, 82, 803 N.E.2d 405 (2003). However, "a prosecutor may comment on the persuasiveness of the defense theory of the case as well as any supporting evidence and reasonable inferences drawn therefrom." People v. Abadia, 328 Ill. App. 3d 669, 678, 767 N.E.2d 341 (2001). "[W]here the complained-of remarks are in response to opposing counsel's own statements contradicting the credibility of a witness, there is no prejudicial error." People v. Carson, 238 Ill. App. 3d 457, 468, 606 N.E.2d 363 (1992).

We find the prosecutor's comments were invited by defense counsel's closing argument. Each of the challenged comments directly responded to defense counsel's attempts to impeach certain witnesses or comment on the persuasiveness of the defense theory of the case. Accordingly, we find the prosecutor's challenged comments were not improper. See Watson, 342 Ill. App. 3d at 1093.

B. Other Crimes Evidence

Defendant contends the prosecutor insinuated uncharged other crimes evidence during the defendant's cross-examination when he questioned defendant regarding whether he had talked with his

13

father about the content of his father's testimony prior to testifying. Although defendant recognizes an objection to the question was sustained, he contends the State erred by making no effort to perfect the impeachment or demonstrate a crime occurred.

After the trial court sustained the objection and instructed the jury to disregard the question, the State was precluded from pursuing the line of impeachment any further. In light of the trial court's ruling and instruction to the jury, we find the defendant was not harmed by the alleged error.

III. Major Case Prints

Defendant contends the evidence of "major case prints" was prejudicial because it implied he had an extensive criminal background and a propensity to commit serious crimes. Evidence of other crimes for which a defendant is not on trial is inadmissible if its only relevance is to show the defendant's propensity to commit crime. People v. Jackson, 372 Ill. App. 3d 112, 121, 865 N.E.2d 195 (2007). It tends to overpersuade the jury, which might convict the defendant because it thinks defendant is a bad person deserving of punishment. Jackson, 372 Ill. App. 3d at 121.

Defendant has forfeited this issue by failing to object to the evidence at trial and failing to include the issue in his post-trial motion. People v. Enoch, 122 Ill. 2d 176, 186-87, 522

N.E.2d 1124 (1988). Even if the issue were not forfeited, we would disagree with defendant's characterization of the evidence as inadmissible "other crimes" evidence.

Forensic scientist and latent print examiner Christi Fischer testified she received ten latent print lifts and eight major case print cards marked with defendant's name. She compared six of the latent fingerprint impressions to the inked major case print cards and concluded the prints did not match. Fingerprint technician Stanley Mocadlo testified he received an order for major case prints of defendant. He explained major case prints "entail not only taking a set of fingerprints by rolling a person's fingers in ink and then on a contrasting card. But also entails taking the tips, the sides of the fingers, and the joint in the fingers and also the palm." Mocadlo said once the prints were completed, they were taken to the lab.

Defendant says the evidence of eight major case print cards implied defendant's involvement in seven previous major cases.

There was no testimony the term "major case prints" referred to the severity of any prior criminal convictions. Additionally, the testimony referred to eight "cards," not eight "cases." The fair inference from Mocadlo's testimony is that the eight cards were from the current case. There was no fingerprint match. The State introduced into evidence his two prior criminal

15

convictions. We conclude there was no error in the court's allowance of the testimony concerning defendant's major case prints.

IV. Coercion of Minority Jurors

Defendant contends the trial court misled and coerced the minority jurors into reaching a verdict when it responded, "keep deliberating" to the jury's notes. The jury retired to deliberate at 1:30 p.m. on Monday, November 7, 2005. At 2:15 p.m., the jury sent the judge a note with three questions: (1) "May we see the copy of Officer Keating and Bechina's arresting report 9-7-02? (2) Was the gun ever dusted for prints after arrest on 9-7-02? (3) Was the bike dusted for prints? When and where was the bike recovered?" After discussion with the parties, the court responded at 2:41 p.m., "You have all of the evidence as to these questions. Please continue with your deliberations." At 3:32, the jury sent a note requesting the transcript from the court reporter. The court asked the jury to clarify which transcript. The jury asked for Young's and Neal's testimony. The transcripts were tendered at 3:47 p.m. At 5:05 p.m., the jury sent two notes to the judge stating, "If all the people do not feel the same, what happen [sic]," and "We have 3 Not guilty and the rest guilty." Defense counsel suggested the court respond that the jury is hung. Counsel then agreed to the response, "keep deliberating." The court answered both questions

16

1-06-0446

at 5:22 p.m.: "Keep deliberating."  At 5:50 p.m., the jury requested to see "all the defense evidence."  The court responded at 6:30 p.m.: "You have received the evidence.  Continue to deliberate."  The defense made a motion for a hung jury.  The court denied the motion.  The jury returned its verdict at 7:20 p.m.

Defendant contends the responses, "keep deliberating," to the jury's notes sent at 5:05 p.m. were particularly coercive because the judge knew one of the jurors was scheduled for surgery the following day and would be unable to continue the deliberations.

During voir dire, juror Denise Engler informed the court she had surgery scheduled for Tuesday, November 8, 2005.  The jury began deliberations at 1:30 p.m. on Monday, November 7, 2005, and reached its verdict at 7:20 p.m.

Defense counsel agreed to respond "keep deliberating" to both notes.  Where a defendant acquiesces in a trial court's answer to a jury's question, he cannot later complain that the trial court abused its discretion.  People v. Reid, 136 Ill. 2d 27, 38, 554 N.E.2d 174 (1990); People v. Sutton, 252 Ill. App. 3d 172, 182, 624 N.E.2d 1189 (1993).  Defense counsel also agreed to allow the juror who was scheduled for surgery to remain on the jury and did not object to dismissal of the alternate.  We do not know where she stood at the time the jury sent out its notes.

17

1-06-0446

We see no error in the trial court's response to the jury's notes. A trial court may not "hasten" a verdict by giving an instruction intended to coerce jurors into surrendering their views. People v. Boyd, 366 Ill. App. 3d 84, 851 N.E.2d 827 (2006); People v. Gregory, 184 Ill. App. 3d 676, 680-81, 540 N.E.2d 854 (1989). "A court's instruction to a jury to continue deliberating should be simple, neutral, and not coercive" and should avoid implying that the majority view is the correct one. Gregory, 184 Ill. App. 3d at 681. "[T]he test is whether, upon examination of the totality of circumstances, the language used actually coerced or interfered with the deliberations of the jury to the prejudice of the defendant." People v. Branch, 123 Ill. App. 3d 245, 462 N.E.2d 868 (1984).

Defendant also contends the trial court should have instructed the jury consistent with the suggested instruction in People v. Prim, 53 Ill. 2d 62, 75-76, 289 N.E.2d 601 (1972):

> "Your verdict must be unanimous. It is your
> duty, as jurors, to consult with one another
> and to deliberate with a view to reaching an
> agreement, if you can do so without violence
> to individual judgment*** In the course of
> your deliberations, do not hesitate to
> reexamine your own views and change your
> opinion if convinced it is erroneous. But do

18

1-06-0446

> not surrender your honest conviction as to
>
> the weight or effect of evidence solely
>
> because of the opinion of your fellow jurors,
>
> or for the mere purpose of returning a
>
> verdict***"

The mere failure to give a Prim instruction is not reversible error. Gregory, 184 Ill. App. 3d at 681. The aim of the suggested instruction in Prim was to avoid instructing jurors to "heed the majority" as a means of securing a verdict. Gregory, 184 Ill. App. 3d at 681. The trial judge's instruction to "keep deliberating" was simple, neutral, and non-coercive. It did not imply to minority jurors that the majority view was the correct one. There was no error in the judge's instruction or in the failure to give a Prim instruction. We note defense counsel did not ask for a Prim instruction.

Citing People v. Santiago, 108 Ill. App. 3d 787, 439 N.E.2d 984 (1982), defendant contends the court's instruction was particularly coercive where the jury volunteered the number of jurors favoring conviction and acquittal. In Santiago, the trial court repeatedly called the jury into open court and asked the numerical division of the jury, then ordered the jury to continue deliberations. Here, the jury volunteered the information a single time, and the court responded, "keep deliberating."

The defendant contends the court abused its discretion in

19

1-06-0446

failing to answer the jury's question, "If all the people do not feel the same, What happen [sic]."  The trial court has a duty to provide instruction to the jury where it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion.  People v. Childs, 159 Ill. 2d 217, 228-29, 636 N.E.2d 534 (1994).  A trial court may exercise its discretion and properly decline to answer a jury's inquiries where the instructions are readily understandable and sufficiently explain the relevant law; where further instructions would serve no useful purpose or would potentially mislead the jury; when the jury's inquiry involves a question of fact; or if providing an answer would cause the court to express an opinion likely to direct a verdict.  People v. Pulliam, 176 Ill. 2d 261, 285, 680 N.E.2d 343 (1997).

The jury was instructed: "Your agreement on a verdict must be unanimous."  We believe the instruction sufficiently explained the relevant law.  Defendant has not shown he was prejudiced by the trial court's failure to explicitly answer the jury's question.  See Pulliam, 176 Ill. 2d at 284-85 (no error in court's response, "You have your instructions. Keep deliberating" in response to jury's question, "What happens if we cannot reach a unanimous decision?")

CONCLUSION

We affirm the defendant's conviction and sentence.

Affirmed.

GARCIA, and R. GORDON, JJ., concur.

20