Sixth Division
February 5, 2010

No. 1-08-0720

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 07 CR 2965 |
| | ) | |
| LAWRENCE CLINTON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Charles P. Burns, |
| | ) | Judge Presiding |

JUSTICE McBRIDE delivered the modified opinion of the court upon denial of rehearing:

Following a January 2008 jury trial, defendant Lawrence Clinton was found guilty of possession with intent to deliver more than 1 gram but less than 15 grams of a substance containing heroin. Subsequently, the trial court sentenced defendant to 10 years in the Illinois Department of Corrections.

Defendant appeals, arguing that: (1) the State failed to prove him guilty beyond a reasonable doubt because (a) it failed to prove that he possessed more than one gram of heroin where the forensic chemist combined multiple packets to determine weight before testing for the presence of a controlled substance, and (b) the evidence was insufficient to prove him guilty of possession of a controlled substance with intent to deliver where defendant was arrested with 13 packets of suspected narcotics and $40 in cash; and (2) the prosecutor's closing arguments were improper and deprived him of a fair trial.

The following evidence was presented at defendant's jury trial.

Officer Lloyd Mock testified that he is a Chicago police officer assigned to the 11th

district. The 11th district's boundaries are south to Roosevelt Road, north to Division Street, east to Western Avenue and west to Cicero Avenue. On December 17, 2006, Officer Mock reported for work at 7 a.m. He was working with three other officers, Officer Purvis, Officer Rosito and Officer Gallegos. They were assigned to patrol a high-crime area within the district, near Springfield and Grenshaw. The officers were in an unmarked vehicle and were not in uniform, but had their "stars" displayed around their necks. Officer Mock was in the front passenger seat of the vehicle while Officer Purvis was driving. Officer Rosito was seated behind Officer Mock and Officer Gallegos was behind Officer Purvis.

The vehicle was headed southbound on Pulaski and Officer Purvis made a left turn onto Grenshaw. The 3900 block of West Grenshaw is a residential neighborhood. When they made the left turn, Officer Mock observed defendant present on the street. Officer Mock identified defendant in court as the man he saw that day. Officer Mock estimated that he was approximately 100 to 150 feet away from defendant when he first saw him. There were no other pedestrians nor any cars being driven on the street at that time. The car continued eastbound, which was closer to defendant. Officer Mock stated that as the car moved closer, defendant "looked in our direction, gave us eye contact and immediately turned around." Officer Mock said that the lights had not been activated on the car.

Officer Purvis stopped the car and Officer Mock got out. Officer Mock testified that he was approximately 40 to 50 feet from defendant when he exited the vehicle. As Officer Mock got out of the vehicle, defendant started to run down an alley and Officer Mock ran after him. As he was running behind defendant, Officer Mock saw defendant "drop, actually throw to the ground with his right hand a piece of paper." Officer Mock stopped and immediately recovered

the piece of paper while the other officers continued to pursue defendant. When Officer Mock recovered the piece of paper, he observed that it contained a plastic bag with "several shiny objects." Based on his experience, Officer Mock believed it was heroin. Meanwhile, Officers Purvis and Rosito detained defendant in the alley. Officer Mock further inspected the bag and saw that the plastic bag contained 13 tinfoil packets containing a white powder suspected to be heroin. Officer Mock retained control of the suspected narcotics until his return to the 11th district when he gave it to Officer Rosito, who entered it into inventory.

Officer Atilo Rosito testified at trial that he is a Chicago police officer assigned to the 11th district. His testimony was substantially similar to Officer Mock's testimony regarding the officers' assignment for December 17, 2006. Officer Rosito was approximately 40 to 50 feet away when he noticed an individual on the street. Officer Rosito identified that individual as defendant. Once Officer Purvis stopped the vehicle, Officer Rosito got out and defendant began to run. Officer Rosito was behind Officer Mock while chasing defendant. Officer Rosito testified that he did not see defendant drop anything, but saw something "when it struck the ground." It landed about a foot away from defendant. He continued with Officer Purvis to pursue defendant as Officer Mock stopped to recover the item. After defendant was detained, Officer Rosito saw Officer Purvis recover $40 in United States currency from defendant's person. When they returned to the 11th district, Officer Rosito completed the inventory for the suspected narcotics and the $40. Officer Rosito admitted on cross-examination that no cell phones, pagers or narcotics packaging material was found on defendant.

David Boler testified that in December 2006, he was employed by the Illinois State Police crime lab as a forensic chemist. Boler left the crime lab in August 2007. Boler stated that on

3

December 20, 2006, he received the suspected narcotics recovered from defendant's arrest. Boler initially verified that the contents of the bag matched the inventory sheet. Boler then testified on how he weighed the contents.

> "These samples were weighed on what we call a balance. We take a plastic weigh boat and tare it, which means we negate its weight, and place all the samples, I placed all the samples into the weigh boat to get a gross weight for all 13 items.
>
> What I did after that was I took out one item at a time and empty the contents of the foil packet into a separate weigh boat and place the foil back onto the balance so that the foil was always taken into account and so that the weight difference that I was getting was only the substance that was being tested. I did that until I reached the maximum weight class for the substance."

Boler stated that "[t]he total weight was 1.336 grams of substance to be tested." Boler then performed a color test which indicated a possible presence of heroin. Boler conducted a second test called a gas chromatography mass spectrometry (GCMS), which breaks down the substance into individual components that Boler was able to determine the presence of heroin. Boler estimated the weight from all packets to be 2.8 grams.

On cross-examination, Boler stated that he performed the two tests from the amount contained in 6 of the 13 packets. He testified that he did not test the remaining seven packets. He also admitted that those remaining packets were not weighed and his estimate of the total weight was based on an average of the six packets that he tested.

1-08-0720

Following Boler's testimony, the State rested. Defendant moved for a directed verdict, arguing that the State failed to prove an intent to deliver, which the trial court denied. Defendant rested without presenting any additional evidence. During the jury instruction conference, the trial court granted, over defendant's objection, the State's request to submit the lesser-included offense of possession of more than 1 gram but less than 15 grams of a substance containing heroin to the jury. Following closing arguments, the jury began deliberations and eventually found defendant guilty of possession with intent to deliver more than 1 gram but less than 15 grams of a substance containing heroin, a Class 1 felony. At his sentencing hearing, the trial court sentenced defendant to a term of 10 years in prison.

This appeal follows.

First, defendant argues that the State did not prove him guilty of possession with intent to deliver more than 1 gram but less than 15 grams of a substance containing heroin beyond a reasonable doubt. Specifically, defendant asserts that the State failed to establish that the weight was more than one gram because the chemist combined six packets into one mixture before testing for the presence of narcotics and therefore the evidence did not prove that each packet contained heroin. The State maintains that the evidence at trial sufficiently established that defendant possessed more than one gram of heroin.

"When a defendant makes a challenge to the sufficiency of the evidence, his or her claim is not subject to the waiver rule and may be raised for the first time on direct appeal." People v. Woods, 214 Ill. 2d 455, 470 (2005). When this court considers a challenge to a criminal conviction based upon the sufficiency of the evidence, it is not our function to retry the defendant. People v. Hall, 194 Ill. 2d 305, 329-30 (2000). Rather, our inquiry is limited to

5

"whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); accord People v. Cox, 195 Ill. 2d 378, 387 (2001). It is the responsibility of the trier of fact to "fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789. "If a court determines that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, the defendant's conviction must be reversed." Woods, 214 Ill. 2d at 470.

In controlled substance cases, it is the State's burden to prove that the substance at issue is a controlled substance. People v. Hagberg, 192 Ill. 2d 29, 34 (2000). Further, "[t]he punishment for possession of a controlled substance with the intent to deliver it depends on how much of it the defendant possessed-or, more precisely, how much of *a substance containing a controlled substance* he possessed." (Emphasis in original.) People v. Coleman, 391 Ill. App. 3d 963, 971 (2009); see also 720 ILCS 570/401(c)(1), (d) (West 2006).

"When a defendant is charged with possession of a specific amount of an illegal drug with intent to deliver and there is a lesser included offense of possession of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt." People v. Jones, 174 Ill. 2d 427, 428-429 (1996). Generally, a chemist is not required to test every sample seized in order to testify as to his or her opinion regarding the makeup of suspected narcotics. Jones, 174 Ill. 2d at 429. Instead, "random testing is permissible when the seized samples are sufficiently homogenous so that one may infer

6

beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested." Jones, 174 Ill. 2d at 429. But when the seized sample is not sufficiently homogenous, then a portion from each container or sample must be tested to determine the substance in each container or sample. Jones, 174 Ill. 2d at 429.

In Jones, the supreme court considered whether the State met its burden of proof beyond a reasonable doubt that the defendant possessed with intent to deliver 1.4 grams of a substance containing cocaine. There, a total of five bags were recovered containing a white rocky substance. The forensic chemist tested two of the bags, but not the remaining three. The total weight of the tested bags was 0.59 grams while the total weight was 1.4 grams. Jones, 174 Ill. 2d at 428.

The supreme court discussed the decision in People v. Kaludis, 146 Ill. App. 3d 888 (1986), relied upon by the State in this case, which considered the testing of homogenous samples. In Kaludis, the forensic chemist "performed a tablet-ballistics test which, in essence, is a visual examination of all the tablets, and this visual examination revealed that all tablets exhibited the same physical characteristics." Kaludis, 146 Ill. App. 3d at 891-92. The chemist found that the tablets were the same size, diameter and roundness with the identical lettering characteristics, bevelling and scoring. Kaludis, 146 Ill. App. 3d at 892. The chemist performed two different sets of tests on two groups of three tablets and the tested sample tablets showed a presence of a controlled substance, which the chemist opined was present in all 100 tablets. Kaludis, 146 Ill. App. 3d at 892.

In contrast with the homogenous tablets in Kaludis, the Jones court, specifically noting the common use of lookalike substances, concluded that the white rocky substance at issue was

not sufficiently homogenous and that it was "conjecture" to assume that the substance in the three untested bags was cocaine. Jones, 174 Ill. 2d at 430.

> "What inference can be drawn concerning the composition of the three packets not tested? Without more, the answer is none at all. And in this case, the five packets containing loose substances cannot be equated with identically marked and stamped tablets, pills, or capsules. While it is not difficult to speculate, as did the trial judge, that the remaining three packets may have contained cocaine, such a finding must be based on evidence and not upon guess, speculation, or conjecture. Quite simply, the chemist failed to test a sufficient number of packets to prove beyond a reasonable doubt that defendant possessed one gram or more of cocaine." Jones, 174 Ill. 2d at 430.

After finding that the State failed to meet its burden of proof regarding the untested packets, the supreme court reduced the defendant's conviction to a Class 2 felony based on the weight of the two tested packets. Jones, 174 Ill. 2d at 430.

This case presents a related question, can a chemist combine packets to reach a specific weight *prior* to testing for the presence of a controlled substance? Here, Boler testified that he emptied the contents of six packets onto the scale until the weight surpassed one gram and then he tested the commingled mixture for the presence of narcotics. The remaining seven packets were not tested at all.

The Fourth District recently answered that question in the negative. In People v.

Coleman, 391 Ill. App. 3d 963 (2009), a police detective recovered 15 bags of suspected cocaine. He weighed the bags at the scene and each bag weighed either 63 or 64 grams. He also field-tested one of the bags and it tested positive for cocaine. The detective then emptied all 15 bags into a larger evidence bag, which was sealed and sent for chemical testing. At trial, the State offered a stipulation that the chemist received the sealed evidence bag and the results of the testing showed that the bag contained 926 grams of cocaine. Coleman, 391 Ill. App. 3d at 967-68.

On appeal, the defendant argued that the detective altered or tampered with the suspected narcotics when he emptied all 15 bags into one evidence bag. The Coleman court pointed out that under the statutes, "it should be apparent that a police officer's mixing substances together at the crime scene is not necessarily a matter of indifference to the defendant. The greater the amount of illegal substance the defendant possesses, the greater the crime-and, for that reason, the State must prove, beyond a reasonable doubt, the weight of the substance containing the drug." Coleman, 391 Ill. App. 3d at 971. After discussing the decisions in Jones and Kaludis, the court concluded that separate containers of white powder is even less distinctive than white rocks. Coleman, 391 Ill. App. 3d at 972.

> "To illustrate what we mean, assume the police find two bags on a kitchen table. One is a Baggie containing 15 grams of a substance containing cocaine. The other is a freezer bag containing 900 grams of pure baking soda, with no intermixture of cocaine. For the 15 grams in the Baggie, the defendant faces imprisonment for 6 to 30 years. 720 ILCS 570/ 401(a)(2)(A) (West 2006). For

9

the 900 grams of baking soda in the freezer bag, he faces no punishment at all-for these are two physically separate substances and baking soda is not a controlled substance. If, before the police arrived, the defendant dumped the contents of the Baggie into the freezer bag, the two substances would become one substance- *i.e.*, 915 grams of a substance containing cocaine-and he would face a greater penalty of 15 to 60 years' imprisonment. 720 ILCS 570/401(a)(2)(D) (West 2006). Obviously, the defendant would not want the police doing this commingling for him.

If, to alter the hypothetical, the freezer bag already contained cocaine mixed in with the baking soda, it would make no practical difference that the contents of the two bags were consolidated, for both bags, to begin with, separately contained a substance containing cocaine and the criminal liability would be the same regardless of whether the contents of the two bags remained separate or were consolidated." Coleman, 391 Ill. App. 3d at 972-73.

Nevertheless, the Fourth District found no error because the defendant had stipulated that the seized white powder was 926 grams of cocaine. Coleman, 391 Ill. App. 3d at 973. "If, as the parties stipulated, all of the white powder in People's exhibit No. 2 was cocaine, it follows that all of the white powder in the 15 bags was cocaine, for People's exhibit No. 2 consisted of the contents of the 15 bags. [The detective] did not 'tamper with, or alter,' the 15 substances by

1-08-0720

mixing them together (the 15 substances were identical: they all were cocaine)." <u>Coleman</u>, 391 Ill. App. 3d at 973-74.

However, our case does not involve a stipulation and we find the analysis in <u>Coleman</u> to be well reasoned and applicable to the facts before us. Here, Boler combined six packets of suspected heroin before determining whether each of the packets did, in fact, contain heroin. In doing so, we now have no way of knowing whether each packet contained heroin or if only one contained heroin. As the supreme court in <u>Jones</u> reasoned, we cannot speculate that each of the packets contained heroin. Rather, the evidence must show the presence of heroin in each packet and Boler failed to test the individual packets to prove beyond a reasonable doubt whether defendant possessed with intent to deliver more than one gram of heroin. Therefore, the State failed to prove defendant guilty beyond a reasonable doubt of possession with intent to deliver more than 1 gram but less than 15 grams of heroin.

Defendant argues that the appropriate remedy is to reverse his conviction. Defendant asserts that his conviction cannot be reduced to simple possession because the jury was instructed that in order to prove him guilty of possession, he must possess more than 1 but less than 15 grams of heroin. However, defendant fails to cite any authority to support his assertion that an outright reversal is the only remedy. Supreme Court Rule 341(h)(7) requires an appellant to include in its brief an "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." 210 Ill. 2d R. 341(h)(7). Moreover, it is well settled that a contention that is supported by some argument but does not cite any authority does not satisfy the requirements of Supreme Court Rule 341(h)(7), and bare contentions that fail to cite any authority do not merit consideration on

11

1-08-0720

appeal. <u>People v. Nieves</u>, 192 Ill. 2d 487, 503 (2000). Thus, this argument is forfeited.

Nevertheless, the combined mixture did test positive for heroin, and while we have no accurate measure of how much of the weighed substance was heroin, the Controlled Substances Act does punish possession with intent to deliver less than one gram. "Although an accused cannot be convicted of a crime with which he has not been charged, he 'may be convicted of an offense not expressly included in the charging instrument if that offense is a "lesser included offense" of the offense expressly charged.' " <u>People v. Williams</u>, 267 Ill. App. 3d 870, 880 (1994), quoting <u>People v. Jones</u>, 149 Ill. 2d 288, 292 (1992). Under these facts, possession with intent to deliver a lesser amount and possession of a lesser amount are lesser included offenses. See <u>People v. Carter</u>, 389 Ill. App. 3d 175, 184 (2009) (a lesser included offense includes all elements of a greater offense in that it would be impossible to commit the greater offense without committing the lesser offense). Possession with intent to deliver of more than 1 but less than 15 grams of heroin is a Class 1 felony (720 ILCS 570/401(c)(1) (West 2006)), but possession with intent to deliver any amount less than one gram is a Class 2 felony (720 ILCS 570/401(d) (West 2006)). The sentencing range for a Class 1 felony is not less than 4 years and not more than 15 years (730 ILCS 5/5-8-1(a)(4) (West 2006)) while a Class 2 felony carries a sentencing range of not less than 3 years and not more than 7 years (730 ILCS 5/5-8-1(a)(5) (West 2006)). As the <u>Coleman</u> court articulated, it is in the interest of defendant's liberty that the State properly test the individual packets prior to combining the samples to determine the weight.

While the State failed to prove possession with intent to deliver more than one gram, it did sufficiently establish that defendant did possess some amount of heroin. Thus, defendant's conviction could be reduced to possession with intent to deliver of an amount less than one gram,

12

a Class 2 felony. However, we must also consider defendant's next argument that the State failed to prove that defendant's possession of heroin was with an intent to deliver before determining the appropriate result.

Defendant contends that the State failed to prove beyond a reasonable doubt that defendant possessed the heroin with the intent to deliver. Specifically, defendant asserts that the circumstantial evidence was not sufficient to prove an intent to deliver. The evidence showed that defendant was arrested after dropping a package containing 13 packets of suspected heroin while running from the police. Upon his arrest, the officers recovered $40 in cash from defendant's person. Nothing else was recovered from defendant. Further, defendant was not observed in a transaction or even speaking to anyone, he was walking alone on a Sunday morning.

Direct evidence establishing an intent to deliver is rare, as such circumstantial evidence is often used to prove an intent to deliver. People v. Robinson, 167 Ill. 2d 397, 408 (1995). Illinois courts have used several factors to show an intent to deliver. These factors include: (1) a quantity of a controlled substance that is too much for personal consumption; (2) the high purity of the drug confiscated; (3) possession of weapons; (4) possession of large amounts of cash; (5) possession of police scanners, beepers or cell phones; (6) possession of drug paraphernalia; and (7) the manner in which the confiscated drugs are packaged. Robinson, 167 Ill. 2d at 408. These factors are not exhaustive, but simply examples of the factors that courts may consider as probative of an intent to deliver. People v. White, 221 Ill. 2d 1, 17 (2006), *abrogated on other grounds,* People v. Luedemann, 222 Ill. 2d 530 (2006). The supreme court noted that the quantity of a controlled substance can be sufficient to show an intent to deliver, but the court

cautioned that "such is the case only where the amount of controlled substance could not reasonably be viewed as designed for personal consumption." Robinson, 167 Ill. 2d at 411. Nevertheless, "[a]s the quantity of controlled substance in the defendant's possession decreases, the need for additional circumstantial evidence of intent to deliver to support a conviction increases." Robinson, 167 Ill. 2d at 413. Illinois courts have stated that where a small amount of drugs is recovered, the minimum evidence needed to affirm a conviction for possession with intent to deliver is that the drugs were packaged for sale and at least one additional factor tending to show an intent to deliver. People v. Blakney, 375 Ill. App. 3d 554, 559 (2007); People v. Beverly, 278 Ill. App. 3d 794, 802 (1996); People v. Delgado, 256 Ill. App. 3d 119, 123 (1993). We consider the sufficiency of the evidence to prove an intent to deliver on a case-by-case basis. Robinson, 167 Ill. 2d at 412-13.

The State relies extensively on the supreme court's decision in White to support its position that it established an intent to deliver. In White, the defendant possessed 12 individually packaged Baggies of rock cocaine, totaling 1.8 grams, and $75 in cash. At the defendant's trial, a police officer testified that he was familiar with the type of objects used to consume crack cocaine, such as, "a round cylinder of some type, such as a car antenna or glass tube with openings at both ends." White, 221 Ill. 2d at 17-18. The officer further stated that this amount of crack cocaine was inconsistent with personal consumption. A second officer testified that the size of the individual rocks was the typical size of those sold on the street for $10 each. White, 221 Ill. 2d at 18. The officer noted that 12 individual rocks were packaged into separate bags, and given that packaging and the amount of money, he stated that the defendant was " 'most likely' " selling the cocaine. White, 221 Ill. 2d at 18. Both officers testified that they routinely

14

patrolled the area where the defendant was arrested because "it was known as a location where illegal drug activity took place on a continuing basis" and they were familiar with at least five apartments in which illegal drug sales were ongoing. White, 221 Ill. 2d at 19.

After construing the evidence and the inferences therefrom in favor of the prosecution, the supreme court concluded that a rational trier of fact could have found the evidence sufficient to establish an intent to deliver. "While defendant was not carrying a pager, weapon, scale, cutting agent, or police scanner, he was also not carrying any paraphernalia associated with personal use of the cocaine. Further, we note that since the cocaine was already packaged for sale, there was no need for defendant to carry cutting agents or a scale." White, 221 Ill. 2d at 20.

In the present case, there is even less evidence probative of an intent to deliver than was present in White. At the time of his arrest, defendant possessed 13 tin foil packets of suspected heroin and $40 in cash. Defendant did not possess any weapons, a cell phone, a pager or any drug paraphernalia. The police had not observed defendant in any transactions nor had they received a tip of suspected drug activity. Significantly, in contrast with the evidence presented in White, neither officer testified whether the amount recovered was inconsistent with personal consumption nor was there any testimony regarding the street value of the heroin and the typical packaging for sale. Additionally, neither officer offered any testimony about any paraphernalia required for a person to consume heroin. While the officers in this case testified that they were patrolling a high-crime area, neither stated that it was known for ongoing drug activity. The officers in White offered substantially more testimony than the officers in the instant case to support an inference that the defendant was engaged in drug sales. All that was presented by the State to show an intent to deliver was defendant's possession of 13 tin foil packets of suspected

15

heroin and $40. Even when considered in the light most favorable to the State, this evidence is not sufficient to prove an intent to deliver beyond a reasonable doubt.

We point out that a recent decision from another division of this court supports our conclusion. In People v. Sherrod, No. 1-07-0989, slip op. at 8 (October 7, 2009), the third division reduced a defendant's conviction for possession with intent to deliver to possession of a controlled substance. In that case, the evidence presented was that the defendant was pulled over after turning right on a red light in a car without a license plate. When the officer ran the vehicle identification number, he discovered that the car was stolen and the defendant was arrested. At the police station, an officer performed a custodial search of the defendant and recovered $35 and a clear plastic bag containing 17 knotted clear baggies, which each contained a very small, white rock-like substance. Subsequent testing of the baggies disclosed that the baggies contained a total of 1.8 grams of cocaine. Defendant was found guilty of possession with intent to deliver. Sherrod, slip op. at 2.

On appeal, the State argued that the packaging alone was sufficient evidence of the defendant's intent to deliver, but the reviewing court disagreed, noting that no other factors were present to show an intent to deliver. There was no testimony that the amount was inconsistent with personal consumption while the defendant had only $35 in cash at the time of his arrest. Further, no evidence was presented regarding the purity of the recovered drugs and the defendant did not possess weapons, scanners, beepers, a cellular telephone or drug-trafficking paraphernalia. Sherrod, slip op. at 4-5. The court noted that it could "find no case where packaging alone of a small amount of an illegal substance demonstrated intent to deliver." Sherrod, slip op. at 8. Accordingly, the court held that the evidence was insufficient to sustain a

16

conviction for possession with intent to deliver.  Sherrod, slip op. at 8.

Finally, defendant asserts that he was denied his right to a fair trial when the prosecutors made improper comments in closing arguments.  Specifically, he argues that these comments misstated the facts and the law.  The State maintains that the challenged comments were either proper, invited by defense counsel's argument or cured by the trial court.  Since we have already concluded that the State failed to prove defendant guilty of possession with intent to deliver more than one gram of a substance containing heroin, we consider whether defendant is entitled to a new trial of the lesser-included charge of unlawful possession.

Initially, the State points out that defendant failed to object to either comment during trial nor did he specifically raise a challenge to either comment in his posttrial motion.  Instead, defendant's posttrial motion made one general allegation that "The Assistant State's Attorney made prejudicial, inflammatory, and erroneous statements in closing arguments designed to arouse the prejudice and passions of the jury."  "To preserve claimed improper statements during closing argument for review, a defendant must object to the offending statements both at trial and in a written posttrial motion."  People v. Wheeler, 226 Ill. 2d 92, 122 (2007).  Defendant acknowledges his forfeiture of this issue, but asks this court to review the raised comments for plain error.

Supreme Court Rule 615(a) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.  Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."  134 Ill. 2d R. 615(a).  "Under the plain error rule, issues not properly preserved may be considered by a reviewing court under two limited circumstances: (1) where the evidence is closely balanced, so as

to preclude argument that an innocent person was wrongfully convicted; or (2) where the alleged error is so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." People v. Hall, 194 Ill. 2d 305, 335 (2000). "However, before invoking the plain error exception, 'it is appropriate to determine whether error occurred at all,' because without error, there can be no plain error." People v. Smith, 372 Ill. App. 3d 179, 181 (2007), quoting People v. Wade, 131 Ill. 2d 370, 376 (1989). Therefore, we will review the issue to determine if there was any error before considering it under plain error.

Generally, a prosecutor is given wide latitude in closing arguments, although his or her comments must be based on the facts in evidence or upon reasonable inferences drawn therefrom. People v. Page, 156 Ill. 2d 258, 276 (1993). "The prosecutor has the right to comment on the evidence and to draw all legitimate inferences deducible therefrom, even if they are unfavorable to the defendant." People v. Simms, 192 Ill. 2d 348, 396 (2000). "Whether a prosecutor's comments or arguments constitute prejudicial error is evaluated according to the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial." Simms, 192 Ill. 2d at 396. "In reviewing comments made at closing arguments, this court asks whether or not the comments engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." Wheeler, 226 Ill. 2d at 123. "Prosecutorial misconduct warrants reversal only if it 'caused substantial prejudice to the defendant, taking into account the content and context of the comment[s], its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial.' " People v. Love, 377 Ill. App. 3d 306, 313 (2007), quoting People v. Johnson,

208 Ill. 2d 53, 115 (2004). While a prosecutor's remarks may sometimes exceed the bounds of proper comment, the verdict must not be disturbed unless it can be said that the remarks resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different. People v. Byron, 164 Ill. 2d 279, 295 (1995). "If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted." Wheeler, 226 Ill. 2d at 123. "The trial court may cure errors by giving the jury proper instructions on the law to be applied; informing the jury that arguments are not themselves evidence and must be disregarded if not supported by the evidence at trial; or sustaining the defendant's objections and instructing the jury to disregard the inappropriate remark." Simms, 192 Ill. 2d at 396-97. We review closing arguments in their entirety and the complained-of comments must be viewed in context. Wheeler, 226 Ill. 2d at 122.

Defendant first alleges that a comment from the State's rebuttal closing argument misstated the law.

"You know what, my partner Jeff Kent touched on this, but I will make it a little more clear. The packaging. Circumstantial evidence. Really easy way to think about it. If any of you all have bought a 12-pack. At a store. You have gotten the 12-pack. And that typically is not all for you. That is something that you are buying, not to be consumed all at one time. It is something that you have that typically you share between everyone else. That's a type of reasonable inference that you can make here today based on

19

just the packaging alone."

Defendant contends that this is an improper analogy that bolstered the State's case and incorrectly inferred to the jury that packaging alone was sufficient to prove intent to deliver. We disagree. The prosecutor made an analogy to a 12-pack of beer or soda as a way to relate to the number of individual packets recovered as not being for personal use. This was a proper inference based upon the evidence. Further, the prosecutor specifically noted that packaging is circumstantial evidence. This comment was not improper.

Defendant also complains of the following comment stated by the prosecutor during closing arguments.

> "In this case circumstantial evidence is what you would use in determining the intent part of this case. Again, I bring it back to the packaging. *The painstaking detail the defendant did to package this.* Inside the paper, plastic bag, tin foil packet. Each tin foil packet. Not one, not two, not three, but 13 tin foil packets."
>
> (Emphasis added.)

Defendant argues that this comment misstates the facts of the case as no evidence was presented showing that defendant packaged the heroin. We agree with defendant. This statement is not an accurate comment on the evidence at trial. No witness testified that defendant was seen packaging the drugs. However, we do not find that this single comment substantially prejudiced defendant. "While a prosecutor may not make arguments or assumptions that have no basis in evidence, improper comments or remarks are not reversible error unless they are a material factor in the conviction or cause substantial prejudice to the accused." People v. Starnes, 374 Ill. App.

3d 132, 135 (2007). This comment, while improper, was not a material factor in defendant's conviction to warrant a new trial. Thus, we decline to grant defendant a new trial based on prosecutorial misconduct.

In a petition for rehearing, the State has asserted that the forensic chemist did test each of the 6 packets individually, not collectively. In support, the State attached Boler's laboratory worksheets to confirm that each packet was tested individually. However, the State's submission of these worksheets is improper because the worksheets were not included in the record on appeal. Evidence that was not before the trier of fact should not be used by the reviewing court to determine the sufficiency of the evidence on appeal. People v. Kluppelberg, 257 Ill. App. 3d 516, 536 (1993); see also People v. Tipton, 78 Ill. 2d 477, 487 (1980). We also feel constrained to point out that this type of hearsay evidence, a chemist's report, would generally not be admitted at a trial. We have again reviewed Boler's testimony as to his testing procedures and point out that he never stated whether he performed the tests on each packet individually or on a combined amount. Boler's testimony does not state that he performed three color tests on each of the six packets, for a total of 18 tests, rather he simply said that he performed three color tests. In fact, his testimony suggests he tested a combined amount of the packets. Additionally, it is unclear if he weighed the substance in six separate weigh boats or one weigh boat. But again, the record supports the conclusion that he emptied all the packets in one weigh boat.

Further, this case was fully briefed and oral arguments were held. In the State's brief, it agreed that "the forensic chemist combined the contents of six packets, with a weight of 1.336 grams, which is greater than the statutorily required one gram, and then tested that substance and positively determined that it was heroin." As noted earlier, the State relied upon Kaludis to

1-08-0720

suggest that testing of homogenous substances, such as pills or capsules, is analogous to the testing procedures used for powder substances, like the heroin in this case. Based on the supreme court's decision in Jones, we considered and rejected this argument earlier in this opinion. The State made no argument that the forensic chemist tested each of the six packets individually, but now raises this new argument for the first time in a petition for rehearing with a report that was not part of the record on appeal, which is a violation of Supreme Court Rule 367(b) (210 Ill. 2d R. 367(b)) ("The petition shall state briefly the points claimed to have been overlooked or misapprehended by the court, with proper reference to the particular portion of the record and brief relied upon, and with authorities and argument, concisely stated in support of the points").

Finally, the result here would remain the same regardless of the testing because we have concluded that the State failed to prove possession with an intent to deliver and the appropriate lesser charge is unlawful possession of less than 15 grams of a controlled substance, a Class 4 felony.

Accordingly, we reduce defendant's conviction pursuant to Supreme Court Rule 615(b)(3) (134 Ill. 2d R. 615(b)(3)) to unlawful possession of less than 15 grams of a substance containing heroin, a Class 4 felony (720 ILCS 570/402(c) (West 2006)). We vacate defendant's sentence and remand the cause to the circuit court for a new sentencing hearing.

Reversed and remanded.

CAHILL, P.J., and J. GORDON, J., concur.