Corrected

2021 IL App (1st) 190896-U

SECOND DIVISION
Rule 23 filed August 17, 2021
Modified upon denial of rehearing September 21, 2021

No. 1-19-0896

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 18 CR 2601 |
| JOE THOMPSON, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Alfredo Maldonado, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Cobbs concurred in the judgment.

**MODIFIED ORDER UPON DENIAL OF REHEARING**

¶ 1     *Held*: The evidence at trial was insufficient to prove that the defendant possessed one gram or more of a substance containing heroin, so as to support a Class 1 felony conviction for possession and intent to deliver one to 15 grams of a substance containing heroin (720 ILCS 570/401(c)(1) (West 2018)).

¶ 2     Following a jury trial in the circuit court of Cook County, the defendant, Joe Thompson,

was convicted of possession of one to 15 grams of a substance containing heroin with intent to deliver (720 ILCS 570/401(c)(1) (West 2018)) and sentenced to four years' imprisonment. On appeal, the defendant makes five contentions. First, he argues that the State failed to prove beyond a reasonable doubt that he possessed one gram or more of a substance containing heroin. Next, the defendant contends that the circuit court erred when it permitted the State to present evidence of the street value of the narcotics without any foundation. Third, the defendant argues that it was improper for the court to permit the police officer, who executed the search warrant, to testify that the firearm recovered in the defendant's home was the subject of that search warrant, when it had expressly ruled *in limine* that the State was barred from introducing such evidence at trial. Fourth, the defendant argues that he was denied his constitutional right to effective representation where his trial counsel failed to: (1) file a motion to suppress incriminating statements he made before he was advised of his *Miranda* rights; (2) object to the State's "improper and scandalous" admission into evidence of a blender covered with white powder; (3) object to the prosecutor's improper argument in closing that 39 bags of heroin were found on the defendant, when only 15 of those bags were tested for the controlled substance; (4) object to the State's introduction of irrelevant and prejudicial testimony regarding his gang involvement; and (5) seek a mistrial on the basis of prosecutorial misconduct. Finally, the defendant asserts that the cumulative effect of the aforementioned errors denied him his right to a fair trial. For the following reasons, we reduce the defendant's conviction from a Class 1 to a Class 2 felony and order his *mittimus* corrected to reflect the same four-year sentence under the lower-class offense.

¶ 3                                   I. BACKGROUND

¶ 4      On January 22, 2018, the defendant was arrested and charged with one count of possession of 100 to 500 grams of cannabis (720 ILCS 550/4(d) (West 2018)) and one count of possession of

2

one to 15 grams of a controlled substance containing heroin with intent to deliver (720 ILCS 570/401(c)(1) (West 2018)). The State *nolle prossed* the possession of cannabis charge and proceeded solely on the possession with intent to deliver count.

¶ 5    Prior to trial, the circuit court denied the State's motion *in limine* seeking to introduce evidence that the defendant was the target of a search warrant for an illegal weapon.  The court ruled that the State could present evidence that the search of the premises and the defendant's person were made pursuant to a warrant and that a gun was recovered as a result of the search. However, the court held that the State could not introduce any evidence suggesting that the defendant's possession of the gun was unlawful, unless the defendant did so first.  When the State sought clarification as to whether the police officer was "not to state that [this] was a custodial search regarding the handgun because that would kind of go into [the court's] restriction[] as to" testimony regarding the defendant's illegal possession of the gun, the court confirmed the State's interpretation, saying that the officer could only testify that "he just simply searched."

¶ 6    The defendant proceeded with his jury trial at which the following relevant evidence was adduced. Chicago Police Officer Nicholaus Lesch testified that on January 22, 2018, he was assigned to the gang investigation unit of the organized crime division. On that day, together with approximately 10 other officers, Officer Lesch executed a search warrant for the first-floor apartment of a two-story building located at 959 North Parkside Avenue, in Chicago.

¶ 7    Officer Lesch testified that upon arrival, he knocked on the outer door of the building and yelled "Chicago police search warrant" several times. After receiving no response, he opened the unlocked door and went inside. Officer Lesch immediately observed the defendant, who was wearing a hoodie, standing in the hallway, holding a small pit bull on a leash.  A young woman, later identified as Ms. Dixon, was standing behind the defendant holding a zebra print tote. Officer

Lesch could not see what was inside the tote because the lid covered the entire container. He also did not immediately search the container because "the initial breach" had not yet been completed.

¶ 8    When asked why it was important that the "breach" be completed, Officer Lesch testified that it was necessary for the officers to clear the residence before searching it because "[s]pecifically if it were this search warrant the object of the search warrant was for a firearm." At this point in the proceedings, defense counsel objected to the officer's testimony. The circuit court, however, overruled the objection and permitted the officer's statement that a gun was the object of the search to stand.

¶ 9    Officer Lesch next testified that after the defendant and Dixon were handcuffed, he performed a quick pat down of the defendant's waistline to ensure that the defendant did not have any weapons and took the tote from Dixon to preserve any possible evidence. Proceeding further into the apartment, Officer Lesch noted that the residence was comprised of a combination living room/dining room area, two bedrooms and a bathroom. Upon entering the living room, Officer Lesch observed the defendant's grandmother, Ms. Curlett, exiting the bedroom closest to the front door. The officers asked Curlett to sit at the dining room table and escorted the defendant and Dixon to the area between the dining and living room.

¶ 10    Officer Lesch then asked the defendant which bedroom was his, and the defendant directed him to the rear bedroom. On his way to the defendant's bedroom, the officer briefly searched the front bedroom and based on its contents determined that it belonged to the defendant's grandmother. Once inside the defendant's bedroom, in plain view Officer Lesch discovered a Ziploc bag of cannabis, a Quaker Oats container full of money and a Wisconsin identification card with the defendant's information and photograph. On cross-examination, Officer Lesch

4

acknowledged that he could not recall from where the identification card was recovered.

¶ 11    Officer Lesch next testified that while at the scene, he also performed a preliminary search of the tote recovered from Dixon.  Inside, he discovered a small red blender, a bottle of Dormin, which he explained was a mixing agent used to increase the volume of heroin, a black semiautomatic pistol, a large bag of cannabis, and a toothbrush. Officer Lesch notified Officer Kovac, and then observed as Officer Kovac emptied the tote and photographed its contents, which also included three more bottles of Dormin, five measuring spoons, and little Ziploc bags. Officer Lesch testified that it was his opinion that these items were indicative of street level narcotic distribution.

¶ 12    During the State's direct examination of Officer Lesch, the State presented the officer with the tote recovered from the scene and asked him to open it. When the officer opened the tote to pull out the items that were inside a significant amount of white powder emerged, prompting the officer to ask the court if he could "stand so [his] face [would not be] next to the powder?" The officer then removed items from the tote, including a blender covered in the same white substance. The court asked three times if Officer Lesch needed gloves to handle the substance. The prosecutor stated that he had been "unaware whether there was any residue within the content."  When the jury was at recess, the court admonished the prosecutor that he "had to be mindful of these things, not just for your own safety but the witness safety and especially the court reporter who is sitting right next to that stuff." The prosecutor repeatedly apologized adding "[h]ad I known there was so much residue I would never [have] asked him to open the contents of that."

¶ 13    Officer Lesch next testified that after he searched the defendant's bedroom and the tote, he proceeded to the kitchen where the defendant had been relocated by Officer Olson. While in the kitchen, the defendant told Officer Lesch, "It's my gun. I told her to pick up the box. She didn't

5

know what was in it." According to Officer Lesch the defendant's statement was not made in answer to any questions by any of the police officers present. In response to the defendant's statement, Officer Lesch searched the defendant's person. Inside the defendant's front right hoodie pocket, he found a large plastic bag with three knotted smaller plastic bags inside, each of those containing 13 small individual bags (for a total of 39 small bags) of what Officer Lesch believed to be heroin.

¶ 14 Officer Lesch opined that, based on his training and experience, the heroin was not for personal use. Officer Lesch explained that he had obtained an estimated street value of the heroin from "a computer-generated table which identifies the amount and location of where the narcotics [were] recovered to give an estimated street value by the police department." When the State asked the officer what that estimated value was, defense counsel objected on the basis of lack of foundation, but the circuit court overruled the objection and permitted Officer Lesch to testify that the value was $1900.

¶ 15 Officer Lesch further averred that the defendant was eventually transported to a police station at Homan Square. After being read his *Miranda* rights, the defendant told the officer that "he found the gun" and that "you all can't protect me."

¶ 16 In addition, according to Officer Lesch, while at the police station, the money recovered from the residence was subjected to a "K-nine sniff test," which revealed a "positive scent." When asked about the significance of the positive scent, Officer Lesch explained that it meant that the money had been "in close proximity or if not intermingled with narcotics itself." On cross-examination, however, Officer Lesch admitted that he did not personally conduct the "K-nine sniff test" and that he could not speak to the reliability of the dog.

¶ 17 Chicago Police Officer Andrew Kovac next testified that on January 22, 2018, he was the

recovery officer on the team that executed the search warrant for the first-floor apartment at 959 North Parkside Avenue. Officer Kovac photographed, recovered, and subsequently inventoried all the evidence the officers discovered during their search of the premises, including the items found inside the zebra print tote, the bag of cannabis, and the $1,638.00 found inside the Quaker Oats container.

¶ 18    Officer Kovac next identified the inventory bag which contained the 39 smaller bags of suspect heroin that Officer Lesch had handed him after recovering them from the defendant. Officer Kovac testified that he put the smaller bags into a larger bag, heat sealed that bag and took it to Homan Square where he inventoried it. On cross-examination, Officer Kovac acknowledged that the recovery log nowhere lists those 39 bags as being recovered at the scene. The officer explained that the log did not include the 39 bags of suspect heroin because it listed only those items recovered from the residence, and not items recovered from individuals. According to Officer Kovac for this same reason he never photographed the 39 bags when they were handed to him by Officer Lesch. Officer Kovac also acknowledged that he signed the recovery log after reviewing it for accuracy but stated that he did not author it. In addition, he acknowledged that although the defendant's name appears at the bottom of the log, he personally never saw the defendant sign the log, and could not state if the signature on the log belonged to the defendant.

¶ 19    Officer Kovac next testified that during the search of the defendant's premises, he personally found two envelopes in the kitchen and four envelopes in the dining room that were addressed to the defendant. All six were addressed to 1003 N. Parkside Avenue, a different residence located across the street from where the warrant was executed. In addition, Officer Kovac himself recovered a scale from the kitchen, which he believed contained bits of white

residue.

¶ 20    Illinois State Police forensic chemist Debora Bracey next testified that she received the inventoried bag of suspect heroin on February 5, 2018. Bracey stated that the bag was in a sealed condition. She initially opened it to make sure that the items inside matched the inventory sheet, which they did. Inside, Bracey found 39 Ziploc bags containing white powder. To determine the weight, Bracey "first zeroed [her] balance" and then "put the packaging and the substance on the balance." She then "removed the substance from the balance and put the packaging back on to get the net weight of the substances." Bracey testified that the "total weight of the evidence" was 4.056 grams. When asked if this weight included all 39 items that were recovered, she indicated that it did not. Instead, to reach that weight she only weighed 15 of the 39 bags because she only "weighed them to a certain weight class." When asked how she knew what weight class to weigh to, Bracey stated that it was "general knowledge," which was posted in the Illinois statute regarding different weight classes for different controlled substances. The posted weight she was weighing for was up to 3 grams because she "would not have met the next weight class which was 15 grams."

¶ 21    Bracey was next asked whether she analyzed "the evidence [she] did weigh," and answered in the affirmative. Specifically, she stated that she first performed a color test, which is a preliminary test used to aid in the determination of a substance based on characteristic color change. The result of the color test indicated the possibility of heroin. Bracey next performed the Gas Chromatography Mass Spectrometry Test (GCMS) test on "this evidence." She explained that the GCMS test is a "confirmatory retest that breaks down the substance into its component party and then shows you a fragmentation pattern of those components." The result of this test indicated that the evidence was positive for heroin.

¶ 22    Bracey averred that after performing these two tests she "placed the evidence in individual

Ziploc bags and then placed it back into the original evidence bag." Based on her education, training and experience, Bracey stated that she formed an opinion as to the presence of a controlled substance "in the exhibit" and that the substance contained heroin.

¶ 23    On cross-examination, Bracey acknowledged that she did not perform a purity analysis of the heroin in the substance she tested.

¶ 24    After the State rested, the defendant filed a motion for a directed finding arguing that Bracey's testimony failed to prove that he possessed one gram or more of heroin. The court denied the motion.

¶ 25    The defendant presented no evidence on his own behalf and the parties proceeded with closing arguments. Among other things, in closing, the State argued that the "K-nine sniff" of the money had tested positive for the presence of drugs. The State also reminded the jury of the powder that had emerged from the tote during the testimony of Officer Lesch. Specifically, the prosecutor argued: "This defendant had the drugs. *** You were all able to observe there is residue that was all on that item in the tote."

¶ 26    After deliberations, the jury found the defendant guilty of possession of a controlled substance with intent to deliver between one and 15 grams of a substance containing heroin.

¶ 27    The defendant filed a posttrial motion arguing that: (1) the State failed to prove beyond a reasonable doubt that the weight of the items recovered was one gram or more of a substance containing heroin; and (2) that the court had erred in overruling counsel's objections to Officer Lesch's testimony that the estimated street value of the substance was $1900 as the testimony lacked foundation and was hearsay.  The court denied the motion.

¶ 28    The defendant was subsequently sentenced to the minimum statutory sentence of four years' imprisonment followed by two years of mandatory supervised release (MSR). The

defendant now appeals. As of this appeal date, the defendant has been released from prison and is currently serving his two-year MSR.[1]

¶ 29                                      III. ANALYSIS

¶ 30    On appeal, the defendant argues that the State failed to prove beyond a reasonable doubt that the weight of the items recovered was one gram or more of a substance containing heroin.  In addition, he makes numerous allegations of error in the admission of trial evidence, prosecutorial misconduct, and his defense counsel's ineffectiveness, contending that they cumulatively prejudiced the outcome of his trial. Because we find the sufficiency of the evidence argument dispositive, we address it first.

¶ 31    In this respect, on appeal, the defendant asserts that because the evidence at trial established that Bracey failed to test each of the 15 bags she weighed for the presence of heroin, the State failed to prove beyond a reasonable doubt that the weight of the narcotics was one gram or more, so as to sustain his conviction.

¶ 32    The State initially responds that the defendant's argument is a foundational one and that he was therefore required to make an objection at trial in order to preserve it.  In the absence of such an objection, the State argues the defendant has forfeited this issue for purposes of appeal.  We disagree.

¶ 33    We have previously held that the same argument raised here by the defendant constitutes a challenge to the sufficiency of the evidence.  See *People v. Clinton*, 397 Ill. App. 3d 215, 220 (2009). In *Clinton*, just as here, the defendant argued that the State failed to prove him guilty beyond a reasonable doubt of the possession and intent to deliver more than one gram but less than

---

[1]We may and do take judicial notice of this fact, which appears on the website of the Illinois Department of Corrections.  See *People v. Peacock*, 2019 IL App (1st) 170308, fn. 1; see also Illinois Department of Corrections website at https://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx.

15 grams of heroin where the chemist had comingled the substances in the packets retrieved by the police. *Id*. On appeal, this court held that the defendant's argument was a "challenge to the sufficiency of the evidence," and that therefore the argument was not forfeited but could be raised for the first time before this court. *Id*.

¶ 34    The State's reliance on *People v. Banks*, 2016 IL App (1st) 131009, ¶ 68, for the opposite conclusion, is at best disingenuous. In *Banks* the defendant argued that the trial court erred in admitting DNA evidence where there appeared to be a gap in the chain of custody between two forensic scientists. *Id*. ¶ 65. In addition, the defendant in *Banks* acknowledged that he had forfeited the issue for appeal and sought review under the plain error doctrine. *Id*. ¶ 65. Here, in contrast, the defendant is not making a "chain of custody" challenge to the evidence presented at trial, nor does he admit to having forfeited the issue by not objecting to it below. Rather, he very clearly argues that the State failed to prove beyond a reasonable doubt an essential element of the crime for which he was charged, namely possession of one to 15 grams of a substance containing heroin. As such, his argument is one challenging the sufficiency of the evidence used to obtain his conviction and we may address it on appeal. See *People. v. Jones*, 174 Ill. 2d 427, 428-29 (1996).

¶ 35    Turning to the merits, we note that in reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001); see also *People v. Collins*, 106 Ill. 2d 237, 261 (1985). While great deference is accorded to the findings of a trier of fact, a criminal conviction cannot stand if the evidence is so improbable or unsatisfactory as to give rise to reasonable doubt regarding an essential element of the offense the defendant has been found guilty of committing. *Clinton*, 397 Ill. App. 3d at 222; see also *People v. Ross*, 229 Ill. 2d 255,

272 (2008). "If a court determines that the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt, the defendant's conviction must be reversed." *People v. Woods*, 214 Ill. 2d 455, 470 (2005).

¶ 36    To convict on a charge of possession of a controlled substance with intent to deliver, the State must prove beyond a reasonable doubt that the substance at issue is a controlled substance. *People v. Hagberg*, 192 Ill. 2d 29, 34 (2000). Moreover, the sentence for possession of a controlled substance with intent to deliver depends on the amount of controlled substance one is found to possess. *People v. Coleman*, 391 Ill. App. 3d 963, 971 (2009). Therefore, "when a defendant is charged with possession of a specific amount of an illegal drug with intent to deliver and there is a lesser included offense of possession of a smaller amount, *** the weight of the seized drug is an essential element of the crime and must [also] be proved beyond a reasonable doubt." *Jones*, 174 Ill. 2d at 428-29.

¶ 37    Generally, a chemist need not test every sample seized in order to render an opinion as to the whole. *Jones*, 174 Ill. 2d at 429. Instead "random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested." *Id*.  However, when the samples are not sufficiently homogenous, a portion from each container or sample must be tested to determine the substance in each container or sample. *Id*. "This requirement means that each container or sample must be tested *independently* to conclusively determine that the contents of that container or sample contains a controlled substance." *People v. Adair*, 406 Ill. App. 3d 133, 138 (2010).

¶ 38    In *Jones*, our supreme court considered whether the State proved the weight element beyond a reasonable doubt when the weight of three packets, not tested for the presence of a

12

controlled substance, was added to the weight of the two tested packets. *Id*. at 430. Even though the rocky white substance found in each of the five packets was unquestionably similar in appearance, our supreme court held that the chemist was required to "test a sufficient number of packets to prove beyond a reasonable doubt that defendant possessed one gram or more of cocaine." *Id*. at 429-430. In other words, although a sample of each of the two packets tested positive for cocaine, supporting an inference that each of the two packets, as a whole, contained cocaine, the inference could not be drawn that the three untested packets also contained cocaine, so as to permit the weight of the three untested packets to be added to the weight of the tested packets and meet the weight element of the charged offense. *Id*. at 430. To conclude that the remaining packets also contained a controlled substance would have amounted to improper speculation or conjecture. *Id*. at 430.

¶ 39    In coming to this conclusion, our supreme court in *Jones* contrasted the recovered packets of the non-homogenous rocky white substance with "identically marked and stamped tablets, pills or capsules." *Id*. The court noted the appellate court's decision in *People v. Kaludis*, 146 Ill. App. 3d 888, 891-92 (1986), which held that a chemist's visual examination of 100 tablets with "identical marking, lettering characteristics, beveling, and scoring," and his subsequent testing of only three of those tablets, which revealed they contained a controlled substance, was sufficient to infer the presence of a controlled substance in all 100 tablets. *Jones*, 174 Ill. 2d at 429.

¶ 40    The *Jones* court, however, held that in contrast to the tablets in *Kaludis*, no such inference could be drawn about the loose white rocky substance at issue in that case. As the *Jones* court explained:

> "What inference can be drawn concerning the composition of the three packets not tested?
> Without more, the answer is none at all. And in this case, the five packets containing loose

substances cannot be equated with identically marked and stamped tablets, pills, or capsules. While it is not difficult to speculate, as did the trial judge, that the remaining three packets may have contained cocaine, such a finding must be based on evidence and not upon guess, speculation, or conjecture." *Id*.

¶ 41    Concluding that the State failed to meet its burden of proof regarding the untested packets, the court reduced the defendant's conviction to a Class 2 felony based on the weight of the two packets tested. *Id*.

¶ 42    Subsequently, in *People v. Coleman*, 391 Ill. App. 3d 963, (2009), this appellate court considered whether the weight element could be proven beyond a reasonable doubt where a police detective combined packets of a white powder, suspected to be narcotics, to reach a specific weight before he tested the evidence for the presence of a controlled substance. In that case, a police detective recovered 15 bags of suspect cocaine. *Id*. at 967. He weighed the bags at the scene and each bag weighed either 63 or 64 grams. *Id*. He also field-tested one of the bags and it tested positive for cocaine. *Id*. The detective then emptied all 15 bags into a larger evidence bag, which was sealed and sent for chemical testing. *Id*. At trial, the State offered a stipulation that the chemist received the sealed evidence bag and the results of the testing showed that the bag contained 926 grams of cocaine. *Id*. at 967-68.

¶ 43    On appeal, the defendant argued that the detective altered or tampered with the suspect narcotics when he emptied all 15 bags into one evidence bag. The *Coleman* court held that "it should be apparent" from the statute why the police officer's mixing of the substances was "not necessarily a matter of indifference to the defendant." *Id*. at 971. As the court explained, "[t]he greater the amount of illegal substance the defendant possesses, the greater the crime—and, for that reason, the State must prove, beyond a reasonable doubt, the weight of the substance

14

containing the drug." *Id.*

¶ 44    After discussing the decisions in *Jones* and *Kaludis*, the *Coleman* court concluded that separate containers of white powder are even less distinctive than white rocks, and that in order to prove the element of weight, the State must conclusively test a sample from each of the individual containers. *Id.*  As the court explained:

"[T]he State cannot evade this requirement by the facile expedient of eliminating the multiplicity of the containers, that is, dumping the contents of several containers into one container and then testing a sample from the one container.

To illustrate what we mean, assume the police find two bags on a kitchen table. One is a  Baggie containing 15 grams of a substance containing cocaine. The other is a freezer bag containing 900 grams of pure baking soda, with no intermixture of cocaine. For the 15 grams in the Baggie, the defendant faces imprisonment for 6 to 30 years. 720 ILCS 570/401(a)(2)(A) (West 2006). For the 900 grams of baking soda in the freezer bag, he faces no punishment at all—for these are two physically separate substances and baking soda is not a controlled substance. If, before the police arrived, the defendant dumped the contents of the Baggie into the freezer bag, the two substances would become one substance—*i.e.,* 915 grams of a substance containing cocaine—and he would face a greater penalty of 15 to 60 years' imprisonment. 720 ILCS 570/401(a)(2)(D) (West 2006). Obviously, the defendant would not want the police doing this commingling for him." *Id.* at 972-73.

¶ 45    The *Coleman* court nevertheless found no error because the defendant had stipulated that the seized white powder was 926 grams of cocaine.  *Id.* at 973.

¶ 46    A year later, in *Clinton*, 397 Ill. App. 3d 215, we reaffirmed the holding of *Coleman* and

held that the State's expert testimony was inadequate to establish the essential weight element of the suspect heroin where the items were commingled prior to testing. *Id*. In *Clinton*, 13 foil packets of suspect heroin were confiscated from the defendant. *Id.* at 219. The chemist testified that he "placed all the samples into the weigh boat to get a gross weight for all 13 items." *Id*. After that he "took out one item at a time and empt[ied] the contents of the foil back onto the balance so that the foil was always taken into account and so that the weight difference" was "only the substance." *Id*. The chemist testified that he did this until he "reached the maximum weight of the substance." *Id*. The chemist emptied the contents of only six of the 13 packets before reaching that maximum weight class. *Id*. at 222. Afterwards, he performed a color test and a GCMS on that "commingled mixture." *Id.*

¶ 47    On appeal, the defendant argued that the State failed to prove him guilty beyond a reasonable doubt of possession and intent to deliver more than one but less than 15 grams of a substance containing heroin. *Id*. This court agreed and held that because the chemist had "combined six packets of suspected heroin before determining whether each of the packets did, in fact, contain heroin," this court had "no way of knowing whether each packet contained heroin or if only one contained heroin." *Id.* at 222.

¶ 48    Applying the rationale of *Jones*, *Coleman,* and *Clinton* to the present facts, we find that viewing the evidence in the light most favorable to the prosecution, the State failed to sufficiently prove the weight element of the charged offense. The evidence at trial established that the police recovered 39 bags containing white powder from the defendant's person. The State's expert forensic chemist, Bracey, testified that she weighed and tested the substance from only 15 of those 39 bags. To determine the weight of the substance she "put the packaging and the substance on the balance." She "then removed the substance from the balance and put the packaging back on to get

the net weight." The weight of the substance in those 15 bags was 4.056 grams. After determining the weight, Bracey performed two tests on the "substance": a color test and the GCMS test. She did not test for purity. Afterwards Bracey "placed the evidence into individual Ziploc bags and then placed it back into the original evidence bag." Based on her analysis Bracey opined that "the substance contained heroin."

¶ 49      Under this record we find that there was insufficient evidence to prove beyond a reasonable doubt that the defendant possessed one or more grams of a substance containing heroin. The State failed to elicit testimony from Bracey that she individually weighed or tested the non-homogenous white powder from each of the 15 bags. Nor did Bracey testify that she performed a purity test. See *Coleman*, 391 Ill. App. 3d at 971, 973 ("The addition of a miniscule amount of [drugs] to 900 grams of an innocuous substance would create a crushing criminal liability"). Instead, Bracey's testimony demonstrates that she comingled the white powder from the 15 bags before performing the two tests that determined that the substance contained heroin. At trial, Bracey and the State repeatedly used singular language when discussing the color and the GCMS tests. Bracey testified that she performed "a color test" and "[t]he result indicated the possibility of heroin." Similarly, with respect to the GCMS, the State asked Bracey "what were the results of that test?" Nowhere did Bracey testify, nor did the State indicate that Bracey performed 15 color tests and 15 GMCS tests. Moreover, throughout her testimony, Bracey continually referred to the items in the bag as "the substance." We find that based on this testimony no rational trier of fact could have found that Bracey individually tested the white powder in each of the 15 bags to determine whether they contained heroin. Accordingly, we hold that the State failed to prove the essential weight element of the charged offense. See 720 ILCS 570/401(c)(1) (West 2018); *Clinton*, 397 Ill. App. 3d at 219-222; see also *Coleman*, 391 Ill. App. 3d at 971-93.

¶ 50    In reaching this conclusion, we have considered the decision in *People v. Harden*, 2011 IL App (1st) 092309, cited to by the State and find it inapposite. In that case, the chemist testified that to weigh the "chunky substances" contained in 20 Ziploc bags, he "took all 20 items, placed it onto the balance, and then took the chunky substance out of each package and placed the packaging back onto the balance getting the weight of the packaging and then just subtracted the weight for a net weight of the chunky substance" of 1.2 grams. *Id*. at ¶ 13. The chemist further testified that after determining the weight, he tested the "chunky substances" by performing two separate tests. First, he performed a color test by taking "a small amount of chunky substance, plac[ing] some of the coloring agent on it ***, and ***a blue color change happened, which [was] an indication that cocaine [was] present." *Id*. Next, the scientist ran a confirmatory test using a "small amount of sample," and "it was positive for cocaine." *Id*.

¶ 51    On appeal, the defendant argued that the State failed to prove the element of weight beyond a reasonable doubt because the chemist may have commingled the evidence prior to testing. *Id*., ¶ 39. The appellate court disagreed, finding that the chemist individually tested evidence found in 20 bags, each containing "a small amount of chunky substance." *Id.* at ¶ 13. In doing so, the court noted that the prosecutor had asked the chemist "whether he analyzed 'the chunky substances'" indicating more than one substance." *Id*. at ¶ 43. In contrast, here, the prosecutor asked Bracey, "Did you analyze the evidence that you did weigh?" Unlike the statement in *Harden*, this testimony does not plainly establish the presence of more than one substance.

¶ 52    Furthermore, unlike the "chunky substance" in *Harden*, the substance at issue here was a white powder. As already noted above, our courts have recognized the differences in handling solid versus powder substances, and the greater attention and focus that are required when weighing the latter. *See Jones,* 174 Ill. 2d 429-30; *Coleman*, 391 Ill. App. 3d at 972 (finding white

18

powder is "even less distinctive in its physical characteristics" than white rocks); see also *People v. Coleman*, 2015 IL App (4th) 131045, ¶ 75 (discussing the importance of weighing each separate bag of a powder substance). Because the substance at issue here was a non-homogenous white powder, Bracey was required to individually test a sample from each of the 15 bags, and the State should have elicited clear testimony from her that she did so to prove the weight element of the offense. *Id.*

¶ 53    While the State correctly points out that under *Harden*, any ambiguity in the chemist's testimony must be resolved in favor of the State, we find no ambiguity in Bracey's repeated use of the word "substance" from which a rational trier of fact could have found that she did in fact test the white powder from each of the 15 bags she used to obtain the weight of that "substance." To the extent that the State argues that *Harden* held that the chemist's statement that he removed "the chunky substance out of each package" before weighing the material "confirmed that he kept the contents of each package separate" (*Id*. at ¶ 43), we disagree with *Harden's* analysis. Any time substances found in different packages are commingled, they will necessarily be removed from each package. Notably, the chemist in *Clinton*, where we reached the opposite conclusion from *Harden*, similarly testified that he "took out one item at a time and empt[ied] the contents of the foil back on the balance ***." *Clinton*, 397 Ill. App. 3d at 219.

¶ 54    In line with *Clinton*, we find that Bracey's testimony was insufficient to establish that she tested the white powder from each of the 15 bags, so as to prove beyond a reasonable doubt that the defendant possessed one gram or more of a substance containing heroin.

¶ 55    The defendant contends, and we agree, that the proper remedy under such circumstances is to reduce his Class 1 felony conviction for possession with intent to deliver of one to 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2018)) to a Class 2 felony conviction for possession with

intent to deliver any amount less than one gram (720 ILCS 570/401(d) (West 2018)).

¶ 56    Our supreme court has repeatedly held that while an accused may not be convicted of a crime with which he has not been charged, he "may be convicted of an offense not expressly included in the charging instrument if that offense is a 'lesser included offense.' " *People v. Jones*, 149 Ill. 2d 288, 292 (1992); see also *People v. Knaff*, 196 Ill. 2d 460, 472-73 (2001). As our supreme court has explained:

> "It is elementary that it is unnecessary to allege a lesser-included offense in an indictment charging an offense of a greater degree when, in order to convict on the greater charge, the prosecution must prove every element necessary for a conviction on the lesser charge. [Citation.] In such a case, if the charging instrument specifically charges the greater offense, while also sufficiently alleging the conduct and mental states required for the lesser offense, the defendant is considered to be charged by implication with the lesser crime." *Knaff*, 196 Ill. 2d at 472-73.

¶ 57    In the present case, apart from the weight element, the lesser-included Class 2 offense is identical to the expressly charged greater Class 1 offense. Both crimes required the State to prove beyond a reasonable doubt that: (1) the defendant had knowledge of the presence of the controlled substance; (2) the controlled substance was in the defendant's immediate control and possession; and (3) the defendant had intent to deliver it. *People v. Jones*, 295 Ill.App.3d 444, 452 (1998).

¶ 58    Reviewing the evidence at trial in the light most favorable to the State we find that, apart from the weight element, the State overwhelmingly proved all three of the aforementioned elements of the charged Class 1 felony offense beyond a reasonable doubt. The defendant does not dispute, nor could he, that he had knowledge of the heroin or that it was in his immediate control and possession. The defendant was found with two other individuals (his mother and Dixon) inside

the apartment in close proximity to the narcotics. Moreover, after being *Mirandized* at the police station, the defendant pointed to his family members and told the officers that "you all can't protect me." In addition, the contents of the apartment overwhelmingly established the defendant's intent to deliver. Apart from the 39 individually packaged baggies of suspect narcotics, the apartment was laden with drug paraphernalia including scales, measuring spoons, a toothbrush, empty Ziploc bags, four bottles of mixing agent, and a large amount of cash, which tested positive in a K-9 sniff test for narcotics. Accordingly, aside from the weight of the narcotics, the evidence at trial overwhelmingly established the defendant's guilt of possession with intent to deliver.

¶ 59    Since the State's forensic chemist, Bracey, positively tested the suspect narcotics for the presence of heroin, we are compelled to conclude that the defendant was proven guilty beyond a reasonable doubt of the lesser included Class 2 felony offense of possession with intent to deliver any amount less than one gram (720 ILCS 570/401(d) (West 2018)).

¶ 60    Because we find the defendant guilty of this lesser included offense, contrary to the defendant's position, we need not address the remainder of his arguments on appeal. Even if we were to accept that the circuit court and defense counsel committed the myriad of errors alleged by the defendant, where the evidence at trial overwhelmingly establishes the defendant's guilt of the lesser included offense, none of the alleged errors could have either singularly or cumulatively prejudiced the defendant so as to have deprived him of a fair trial, requiring reversal for new proceedings.

¶ 61    Accordingly, as per the defendant's own request, we reduce his Class 1 felony conviction for possession with intent to deliver of one to 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2018)) to a Class 2 felony conviction for possession with intent to deliver any amount less than one gram (720 ILCS 570/401(d) (West 2018)).

¶ 62    In addition, upon the defendant's request, we do not remand for a new sentencing hearing on the lesser included conviction. Because the defendant was sentenced to the minimum prison term allowed under the Class 1 felony conviction and has already served more than the minimum sentence permitted under the lower-class felony sentencing range to which we have now reduced his conviction, we see no reason to depart from the sentence already imposed. *Compare* 730 ILCS 5/5-4.5-30 (a) (l) (West 2018) (Class 1 sentencing range is between four to 15 years imprisonment followed by two years of MSR) *with* 730 ILCS 5/5-4.5-35(a) (l) (West 2018) (Class 2 sentencing range is between three to seven years imprisonment followed by two years of MSR). Accordingly, pursuant to Illinois Supreme Court Rule 615(b)(1), we order that the *mittimus* be corrected to reflect the four-year prison sentence, time served, with two-years of MSR under the reduced Class 2 felony conviction. *See People v. James*, 2017 IL App (1st) 143036, ¶ 59 (" 'Pursuant to Supreme Court Rule 615(b), this court may correct the *mittimus* without remanding the case to the trial court.' " *People v. Pryor*, 372 Ill. App. 3d 422, 438 (2007) (citing Ill. S. Ct. R. 615(b)).

¶ 63                                    IV.  CONCLUSION

¶ 64    For the foregoing reasons, the defendant's conviction is reduced to a Class 2 felony possession with intent to deliver any amount less than one gram of a substance containing heroin (720 ILCS 570/401(d) (West 2018)), and the *mittimus* is corrected to reflect the appropriate sentence under that reduced charge.

¶ 65    Affirmed as modified; *mittimus* corrected.